[Civ. No. 19766. Third Dist. May 25, 1982.]

STOCKTON METROPOLITAN TRANSIT DISTRICT, Plaintiff, Cross-defendant and Appellant, v.
AMALGAMATED TRANSIT UNION, LOCAL 276, AFL-CIO, Defendant, Cross-complainant and Respondent;
BOB D. AUSTIN et al., Defendants and Respondents.

204

**COUNSEL**

Wilson & Hoslett, John A. Wilson and David P. Whitridge for Plaintiff, Cross-defendant and Appellant.

Neyhart, Anderson, Nussbaum, Reilly & Freitas and Stanley Neyhart for Defendant, Cross-complainant and Respondent and for Defendants and Respondents.

**OPINION**

**PHILLIPS, J.**\*—Plaintiff and cross-defendant Stockton Metropolitan Transit District (SMTD) appeals from a judgment of the Superior Court of San Joaquin County compelling it to arbitrate a controversy arising between it and defendant and cross-complainant Local 276 of the Amalgamated Transit Union (Union), over proposed changes in the SMTD retirement plan. The judgment also denied SMTD's motion for a preliminary injunction to prevent arbitration, and stayed SMTD's complaint pending the decision in arbitration. SMTD raises a number of issues including: whether state or federal law applies in the interpretation and legality of the arbitration agreement; whether the agreement provides for arbitration of such issues; whether the SMTD had the authority in law to agree to submit the disputed issues to arbitration; if federal law permits SMTD to agree to submit the disputed issues to arbitration does it thereby invade state sovereignty; and whether the trial

---

\*Assigned by the Chairperson of the Judicial Council.

court committed error in its judgment. We reject SMTD's contentions and affirm the judgment of the trial court.

I

The relevant facts are not in dispute. SMTD was formed pursuant to the Stockton Metropolitan Transit District Act of 1963. (Pub. Util. Code, § 50000 et seq.) After its creation SMTD acquired through eminent domain the facilities of a private bus company in the City of Stockton. The employees of the private company were absorbed into SMTD. Thereafter the Union was certified as the collective bargaining representative of the employees. This dispute arises out of the joint operation of the Stockton Metropolitan Transit District Act of 1963, the federal Urban Mass Transportation Act of 1964 (49 U.S.C. § 1601 et seq.), and a protective agreement between SMTD and the Union required by the federal government before it would provide funds to SMTD pursuant to the Urban Mass Transportation Act.

The Stockton Metropolitan Transit District Act of 1963, in Public Utilities Code section 50120, as amended, provides for collective bargaining. That section requires the Union to negotiate in good faith and to make all reasonable efforts to reach an agreement on the terms of a written contract governing wages, salaries, hours, working conditions, and grievance procedures. Further: "In case of a dispute over the terms of a written contract governing wages, salaries, hours or working conditions, which is not resolved by negotiations in good faith between the board and the representatives of the employees, the board and the representatives of the employees shall submit said dispute to the decision of the majority of an arbitration board, and the decision of a majority of such arbitration board shall be final." The arbitration board is to consist of two representatives of the labor organization and two representatives of the transit board, and a fifth member agreed upon by those parties.

The federal Urban Mass Transportation Act of 1964 was enacted in order to provide financial assistance to state and local governments for the development and operation of mass transportation systems. (49 U.S.C. § 1601.) Section 13(c) of the act (49 U.S.C. § 1609(c)), provides: "It shall be a condition of any assistance under section 1602 of this title that fair and equitable arrangements are made, as determined by the Secretary of Labor, to protect the interests of employees affected by such assistance. Such protective arrangements shall include, without

being limited to, such provision as may be necessary for (1) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; (2) the continuation of collective bargaining rights; (3) the protection of individual employees against a worsening of their positions with respect to their employment; (4) assurances of employment to employees of acquired mass transportation systems and priority of reemployment of employees terminated or laid off; and (5) paid training or retraining programs. Such arrangements shall include provisions protecting individual employees against a worsening of their positions with respect to their employment which shall in no event provide benefits less than those established pursuant to section 5(2)(f) of this title.[1] The contract for the granting of any such assistance shall specify the terms and conditions of the protective arrangements."

The SMTD has from time to time sought and received financial assistance from the federal government under the Urban Mass Transportation Act of 1964. In order to obtain such assistance SMTD entered into a "13(c) agreement" with the Union. Paragraph (15)(a) of that agreement provides: "In the event of any labor dispute involving the Recipient [SMTD] and the employees covered by this agreement which cannot be settled within thirty (30) days after such dispute first arises, such dispute may be submitted at the written request of either the Union or the Recipient to a board of arbitration selected in accordance with the existing collective bargaining agreement, if any, or if none, as hereinafter provided. . . . The term 'labor dispute' shall be broadly construed and shall include, but not be limited to, any controversy concerning wages, salaries, hours, working conditions or benefits, including health and welfare, sick leave, insurance, or pension and retirement provisions, the making or maintaining of collective bargaining agreements, any grievances that may arise, and any controversy arising out of or by virtue of any provisions of this agreement. Nothing in this paragraph, or agreement, shall be construed to enlarge or limit the right of the employees covered by this agreement, or their employer, to utilize upon expiration of any collective bargaining agreement or otherwise any economic measures that are not inconsistent or in conflict with the collective bargaining agreement or applicable law."

---

[1]Section 5(2)(f), referred to in section 1609(c), was repealed by Public Law No. 95-473, section 4(b), in 1978, as part of the repeal of the Interstate Commerce Act and the incorporation of the provisions of that act into subtitle IV of revised title 49, Transportation. That legislation is irrelevant to the issues involved in this case.

This dispute concerns certain proposed changes by the Union in the SMTD retirement plan. The Stockton Metropolitan Transit District Act of 1963 provides for the establishment of a retirement plan. (Pub. Util. Code, §§ 50130-50156.) In 1968 the Union and SMTD arbitrated the terms of a retirement plan. SMTD appealed the decision of the board of arbitration. The trial court held that the matter was properly submitted to arbitration but that the board of arbitration had exceeded its powers by adopting a retirement plan inconsistent with the provisions of the Stockton Metropolitan Transit District Act of 1963. A rehearing in arbitration was held and upon SMTD's appeal the decision of the board of arbitrators was upheld.

Section 18 of the retirement plan adopted by the board of arbitration provides that it shall be in full force and effect from June 1, 1968, to and including December 31, 1974, and will continue from year to year thereafter unless either the Union or SMTD serve written notice six months prior to December 31, 1974, or any year thereafter of a desire to cancel or terminate the plan. Where no cancellation or termination notice is served and the parties desire to continue the plan but to change or revise it, then either party may serve written notice upon the other at least six months prior to December 31, 1974, or any year thereafter advising of the desired changes or revisions. The retirement plan may be amended, altered or modified, or a successor plan adopted, at any time with the consent of SMTD or its successor and the representative of the employees provided that no existing rights are adversely affected without corresponding advantages and that no state or federal laws are violated.

The Union desired to make changes in the retirement plan and to this end discussions were conducted in 1976 and 1977. In January 1978, the Union delivered a written list of its proposed changes to SMTD. Negotiations were conducted over the next one and one-half years without agreement. At the final meeting on July 16, 1979, the Union proposed arbitration and thereafter formal notice of demand for arbitration was served upon SMTD. SMTD filed its complaint for declaratory relief, injunction, temporary restraining order, and preliminary injunction, asserting that it may not be compelled to submit to arbitration on the terms of the retirement plan. The Union filed a cross-complaint to compel arbitration. The trial court denied a request for a preliminary injunction to prevent arbitration, granted the motion to compel arbitration, and stayed the issues of the complaint pending arbitration.

■ The type of arbitration with which we are concerned is referred to as interest arbitration and is sometimes called contract arbitration or quasi-legislative arbitration. (*Div. 1287, etc.* v. *Kansas City Area Transp. Auth.* (8th Cir. 1978) 582 F.2d 444, 446, fn. 1.) "[It] is the arbitration that may be required when an employer and the collective bargaining agent of employees come to an impasse with respect to the terms and conditions of a new collective bargaining agreement. It differs from grievance arbitration which may be required when disputes arise under an existing collective bargaining agreement." (*Ibid.*) That such arbitration may be an acceptable means of resolving labor disputes is expressly recognized in Public Utilities Code section 50120, which provides that SMTD must submit to interest arbitration to resolve disputes arising over the terms of the collective bargaining agreement.

The 13(c) protective agreement entered into between SMTD and the Union in order that SMTD could qualify for federal assistance provides for interest arbitration of disputes over pension and retirement provisions. SMTD contends, however, that it did not have authority to enter into such an agreement and that the 13(c) agreement constitutes an illegal delegation of its power and authority over the retirement plan. SMTD further contends that California rather than federal law applies in determining legality of the agreement, and that if federal law purports to require interest arbitration then it unconstitutionally invades state sovereignty.

## II

■ Numerous federal courts have held that a federal cause of action arises under section 13(c) of the Urban Mass Transportation Act of 1964 and agreements pursuant thereto. (See for example *Local Div. No. 714, etc.* v. *Greater Portland etc.* (1st Cir. 1978) 589 F.2d 1; *Local Div. 519, etc.* v. *LaCrosse Mun. Transit U.* (7th Cir. 1978) 585 F.2d 1340; *Div. 1287, etc.* v. *Kansas City Area Transp. Auth., supra,* 582 F.2d 444.) The decisions reason that disputes regarding such agreements "arise out of" federal law and give to the representative of the employees a federal cause of action.

This issue was recently laid to rest by the United States Supreme Court in its decision in *Jackson Transit Authority* v. *Transit-Union*

(1982) 457 U.S. 15 [72 L.Ed.2d 639, 102 S.Ct. 2202]. Therein the high court determined that section 13(c) does not create a body of federal law applicable to labor relations between local governments and transit workers. (*Id.*, at p. 29 [72 L.Ed.2d at p. 650].) "Section 13(c) would not supersede state law, it would leave intact the exclusion of local government employers from the National Labor Relations Act, and state courts would retain jurisdiction to determine the application of state policy to local government transit labor relations. Congress intended that § 13(c) would be an important tool to protect the collective bargaining rights of transit workers, by ensuring that state law preserved their rights before federal aid could be used to convert private companies into public entities.... But Congress designed § 13(c) as a means to accommodate state law to collective bargaining, not as a means to substitute a federal law of collective bargaining for state labor law." (*Id.* at p. 29 [72 L.Ed.2d at p. 650].) The unions, of course, are free to pursue a contract action in state court. (*Id.*, at p. 29, fn. 13 [72 L.Ed.2d at p. 650].)[2]

In accordance with the decision in *Jackson Transit Authority*, we must agree with SMTD that neither the Urban Mass Transportation Act of 1964, nor the section 13(c) agreement involved herein gives the Union a federal cause of action enforceable in federal court. This does not end our inquiry, however, because the Union is not attempting to enforce its contract in federal court, it has brought its suit in state court. We thus must consider whether the section 13(c) agreement is enforceable under state law.

### III

■ SMTD contends that the section 13(c) agreement it was required to enter into in order to obtain federal assistance violates state sovereignty and is unconstitutional. It relies upon *National League of Cities* v. *Usery* (1976) 426 U.S. 833 [49 L.Ed.2d 245, 96 S.Ct. 2465].

---

[2]The Supreme Court noted that the federal government could respond to a violation of a section 13(c) agreement by threatening to withhold additional financial assistance, and left open the question whether the federal government could bring a federal cause of action in federal court against a local government for violation of its grant agreement. (*Ibid.*)

That case, however, is inapposite to the situation herein. In that case the federal government attempted to provide for a minimum wage and hour scale to be paid by state and local governments to their employees. The Supreme Court struck down the legislation because it was a direct attempt to displace the states' freedom to structure integral operations in areas of traditional government functions. (426 U.S. at p. 852 [49 L.Ed.2d at pp. 257-258].) As noted by the court in *Jackson Transit Authority*, the Urban Mass Transportation Act of 1964 does not attempt to directly displace states' powers in the area of mass transit, rather it merely provides for certain conditions to the receipt of federal aid to which a state or local government must agree. (457 U.S. at pp. 26-29.) The acceptance of a federal grant under terms and conditions authorized by Congress creates a binding contract. (*McDonald* v. *Stockton Met. Transit Dist.* (1973) 36 Cal.App.3d 436, 441 [111 Cal.Rptr. 637].)

In any event, before there can be an invasion of state sovereignty it must appear that the federal government has interfered with state policy in an area of traditional state control. We reject the contention that the federal government has done so in this instance. (See *Transportation Union* v. *Long Island R. Co.* (1982) 455 U.S. 678, 682-687 [71 L.Ed.2d 547, 552-554, 102 S.Ct. 1349].) It appears unquestionable that the Stockton Metropolitan Transit District Act of 1963 was enacted in order to obtain promised federal funding to obtain and operate a transit district in the Stockton area. To this end the act contains provisions uncommon to other types of public employment statutes. We have noted that section 50120 of the Public Utilities Code provides for interest arbitration where an impasse is reached during collective bargaining. Pension and retirement provisions are typically issues which are subject to collective bargaining, and disputes arising therefrom are considered to be arbitrable under the provisions of a collective bargaining agreement. (See *Bressette* v. *International Talc Co., Inc.* (2d Cir. 1975) 527 F.2d 211, 216; *United Steelwrkrs. of Amer.* v. *General Steel Indus., Inc.* (8th Cir. 1974) 499 F.2d 215, 219.) It thus appears that the terms of the SMTD retirement plan would be subject to interest arbitration under the provisions of the Stockton Metropolitan Transit District Act of 1963.

The argument advanced by SMTD that the Legislature intended it to have the nondelegable duty to determine the provisions of its retirement

plan is rendered less persuasive by the fact that the Stockton Metropolitan Transit District Act of 1963 provides that SMTD may provide for retirement benefits by means of group insurance, or other insurance, or participation in the State Employees' Retirement System or the Federal Social Security Act, or by such means as in the opinion of the board will satisfactorily provide an adequate and sure method of meeting the payments contemplated by the retirement system. (Pub. Util. Code, §§ 50131, 50134.) In light of these provisions it does not appear that any state policy forbids the submission of the terms of the retirement plan to interest arbitration under section 50120.

## IV

The entire premise of SMTD's argument is that state law forbids it from submitting the terms of its retirement plan to interest arbitration, and that if it purported to do so under the 13(c) agreement then the agreement is illegal and may not be enforced. We disagree because we find clear authority for SMTD to enter into the 13(c) agreement, including the interest arbitration terms.

We have noted that the Stockton Metropolitan Transit District Act of 1963 was enacted in anticipation of obtaining federal financial assistance. In enacting the act the Legislature did not fail to provide authority for SMTD to obtain such assistance. Section 50203 of the Public Utilities Code provides: "The district may accept, without limitation by any other provisions of this part requiring approval of indebtedness, contributions or loans from the United States, this State, or any department, instrumentality, or agency of either thereof, for the purpose of financing the acquisition, construction, maintenance, and operation of transit facilities, and may enter into contracts and co-operate with, and accept co-operation from, the United States, this State, or any department, instrumentality, or agency of either thereof, in the acquisition, construction, maintenance, and operation, and in financing the acquisition, construction, maintenance, and operation of any such transit facilities in accordance with any legislation which Congress or the Legislature of the State of California may have theretofore adopted or may hereafter adopt, under which aid, assistance, and co-operation may be furnished by the United States or this State in the acquisition, construction, maintenance, and operation or in financing the acquisition, construction, maintenance and operation of any such transit facilities. *The district may do any and all things necessary in order to avail itself of such aid, assistance, and co-operation under any federal*

*or state legislation now or hereafter enacted.* Any evidence of indebtedness issued under this section shall constitute a negotiable instrument." (Italics added.)

We find in Public Utilities Code section 50203 clear authority for the district to enter into the 13(c) agreement required by the federal government as a condition to the receipt of federal assistance. Such an act served the state purpose of receiving federal aid in developing and operating SMTD. SMTD may not now contend that it was without authority to enter into such an agreement.

V

SMTD suggests that the 13(c) agreement should not be enforced, because it is an adhesion contract. ■ Adhesion contracts are not *per se* unenforceable, they are valid and will be enforced where they are reasonably certain and do not contain unconscionable terms. (See *Yeng Sue Chow* v. *Levi Strauss & Co.* (1975) 49 Cal.App.3d 315, 325 [122 Cal.Rptr. 816].) The 13(c) agreement involved herein is not uncertain and does not contain harsh or unconscionable terms. It served the public interest by enabling SMTD to obtain federal funds. That interest arbitration is not contrary to public policy under the Stockton Metropolitan Transit District Act of 1963 is demonstrated by Public Utilities Code section 50120 requiring such arbitration over the terms of the collective bargaining agreement.

■ SMTD argues that the interest arbitration provisions of the 13(c) agreement are permissive rather than mandatory. SMTD notes the use of the word "may" rather than "shall" in the agreement. In the context of this case we must reject the argument. The numerous federal authorities we have cited in this case considered similar or identical 13(c) agreements and no court has found the interest arbitration provisions of such agreements to be permissive only. This is in accord with federal law concerning the construction of arbitration agreements, which holds that "may" in arbitration agreements requires arbitration at the request of either party. (See for example *United Steel Workers of America* v. *American Mfg. Co.* (1960) 363 U.S. 564 [4 L.Ed.2d 1403, 80 S.Ct. 1343].) California decisional law likewise construes the word "may" as mandatory in arbitration contracts. (See *Service Employees Internat. Union, Local 18* v. *American Building Maintenance Co.* (1972) 29 Cal.App.3d 356, 360-361 [105 Cal.Rptr. 564].) We conclude that the trial court did not err in ordering interest arbitration in the circumstances presented herein.

The judgment is affirmed.

Puglia, P. J., and Blease, J., concurred.

A petition for a rehearing was denied June 24, 1982, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied August 4, 1982.