**AMALGAMATED TRANSIT UNION, ATU LOCAL 168, and through Thomas Phillips, President and Business Agent and Trustee ad Litem**

v.

**The COUNTY OF LACKAWANNA TRANSIT SYSTEM,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 16, 1996.

Decided July 9, 1996.

Bruce J. Kasten, for Appellant.

Joseph J. Pass, for Appellee.

Before SMITH and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

County of Lackawanna Transit System (COLTS) appeals from the order of the Court of Common Pleas of Lackawanna County that granted peremptory judgment in favor of Amalgamated Transit Union, Local 168 (Union) and against COLTS directing interest arbitration of a successor collective bargaining agreement (CBA). In this case of first impression, we vacate the trial court's order.

COLTS and the Union have been parties to a series of CBAs for approximately twenty years. The most recent CBA began July 1, 1990 and was in force and binding to June 30, 1993 and from year-to-year thereafter, unless changed by the parties. COLTS' employees have continued to work under the terms and conditions of the expired CBA and negotiations have continued for a new CBA with the assistance of mediators. Being unable to reach an agreement on January 14, 1994, the

Union requested the parties proceed to binding arbitration based on the "Section 13(c) Agreement" referred to below.

In addition to the traditional CBA executed between labor and management, COLTS and the Union are parties to an agreement commonly known as a Section 13(c) Agreement. This agreement was executed pursuant to the requirements of the Urban Mass Transportation Act (UMTA), 49 U.S.C. § 5333(b) [formerly 49 U.S.C. § 1609(c) ].[1] The parties' Section 13(c) Agreement was subject to and approved by the Secretary of Labor in May 1973.[2] Section (3) of that Agreement provides:

> (3) The collective bargaining rights of employees covered by this agreement, including the right to arbitrate labor disputes and to maintain union security and check-off arrangements, as provided by applicable laws, policies and/or existing collective bargaining agreements shall be preserved and continued. The Authority agrees that it will bargain collectively with the Union or otherwise arrange for the continuation of collective bargaining, and that it will enter into agreements with the Union or arrange for such agreements to be entered into, relative to all subjects of collective bargaining.[3]

The Union, in its request for arbitration, relies on Paragraph 9 of the parties' Section 13(c) Agreement, which specifically speaks to the issue of interest arbitration, as follows:

> *Any labor dispute or controversy regarding the application, interpretation, or enforcement of any of the provisions of this agreement which cannot be settled* by the parties thereto *within thirty (30) days* after the dispute or controversy first arises may be submitted at the written request of

---

1. UMTA was promulgated in 1964 for the purposes of providing federal funding to enable public transportation authorities, such as COLTS, to purchase foundering privately-run transit companies and to ensure the continuation of mass transportation services in urban areas. As a condition of receipt of these federal funds, recipients, such as COLTS, are required to make fair and equitable arrangements to protect the interest of employees affected by such assistance and acquisitions as determined by the Secretary of Labor. COLTS receives federal transit funds and depends on those funds to operate its transit system.

2. In 1975, COLTS became party to the National Employee Protective Agreement which continued to obligate COLTS to adhere to its Section 13(c) Agreement as a condition of continually receiving federal assistance.

3. As noted above, there is no dispute that the parties complied with this Section 13(c) provision.

the Authority [COLTS] (or other operator of the transit system), or the Union, to a board of arbitration as provided below. Each party shall, within ten (10) days after such request, select one member of the arbitration board, and the members thus chosen shall select a neutral member who shall serve as chairman. Should the members selected by the parties be unable to agree upon the appointment of the neutral member within ten (10) days, any party may request the American Arbitration Association to furnish a list of seven (7) persons from which the neutral member shall be selected.... The decision by majority vote of the arbitration board shall be final, binding and conclusive.... The term "labor dispute," for the purposes of paragraph (9) herein, shall be broadly construed and shall include, but not be limited to, any controversy concerning wages, salaries, hours, working conditions, or benefits, including health and welfare, sick leave, insurance, or pension or retirement provisions, any differences or questions that may arise between the parties, including *the making or maintaining of collective bargaining agreements, the terms to be included in such agreements,* any grievances that may arise, and any controversy arising out of or by virtue of any of the provisions of this agreement *for the protection of employees affected by the Project.*

(Emphasis added.)

Also, the Section 13(c) Agreement provides in Paragraph (17) as follows:

In the event this Project is approved for assistance under the Act, the foregoing terms and conditions shall be made part of the contract of assistance between the Federal Government and the applicant for federal funds, provided, however, that this agreement shall not merge into the contract of assistance, but shall be independently binding and enforceable by and upon the parties hereto, in accordance with its terms; *nor shall the collective bargaining agreement between the Union and the operator of the transit system merge into this agreement, but each shall be independently binding and enforceable by and upon the parties thereto, in accordance with its terms.* (Emphasis added.)

The Union requested that the parties proceed to binding interest arbitration, in accordance with what the Union believed was its rights and obligations as set forth in the above paragraph 9 of the Section 13(c) Agreement. The Union sought to resolve, through interest arbitration, the dispute between the parties over what the terms and conditions of their successor CBA should be. The Union appointed its arbitrator but COLTS refused to appoint an arbitrator, contending that arbitration provisions of the Section 13(c) Agreement was only applicable and available for "labor disputes or controversies regarding the application, interpretation or enforcement" of the provisions of the Section 13(c) Agreement. The parties' CBA did not provide for interest arbitration of a successor CBA. COLTS continued to request negotiations for a successor CBA.[4]

The Union filed for peremptory judgment with the trial court, requesting COLTS be ordered to arbitrate the successor CBA. COLTS responded, stating that the interest arbitration provisions[5] of the Section 13(c) Agreement are not applicable to negotiations for a successor CBA and filed a cross-motion for peremptory judgment for the trial court to make such finding. COLTS' cross-motion asserted that the trial court should compel arbitration solely on the issue of whether the CBA negotiations should be submitted to interest arbitration. COLTS argued that the arbitration machinery provided for in the Section 13(c) Agreement was available only for labor disputes or controversies regarding the application, interpretation or enforcement of provisions of the Section 13(c)

---

4. Neither the Union nor COLTS requested arbitration as to whether or not the interest arbitration was an arbitrable issue.

5. The practice of submitting labor negotiations to a separate panel for resolution, known as "interest" arbitration, differs dramatically from "grievance" arbitration. In contrast, interest arbitration legislates for the parties and imposes an agreement upon them. The interest arbitrator takes over the collective bargaining process and displaces the parties' own efforts at negotiation of a collective bargaining agreement.

Agreement and did not involve negotiations for a successor CBA.

The critical issue in dispute is whether the Section 13(c) Agreement requires the parties to submit to interest arbitration before a tripartite panel of arbitrators the terms of a successor CBA. The Union has not submitted the parties' dispute relating to a successor CBA to grievance arbitration under the terms of the Grievance and Arbitration Provision of their CBA, which does not provide for interest arbitration, but rather asserts that the Section 13(c) Agreement provides for such arbitration regardless of whether the CBA contains an interest arbitration clause or not.

The trial court denied the motion for peremptory judgment of COLTS but granted the motion for peremptory judgment filed by the Union.[6]

The trial court stated that:

It is obvious to us the agreement states that binding arbitration is available if either of two events come into play: any labor dispute, as actually defined in paragraph 9, *or* any controversy regarding the application, interpretations or enforcement of any of the agreement's provision. Paragraph 9 offers mutually exclusive alternatives for triggering arbitration, either of which is sufficient standing alone. COLTS' conjunctive interpretation of paragraph 9, which excludes labor disputes from arbitration unless they are involved in the use or understanding of a certain provision of a labor contract, defies logic, especially since one of the alternatives, "labor dispute," is distinctively defined in that provision....

Trial court opinion at 7.

 On appeal to this Court,[7] COLTS argues that the trial court erred as a matter of law in determining that it had jurisdiction to decide whether or not paragraph 9 of the Section 13(c) Agreement required interest arbitration of the successor CBA. COLTS asserts that the Section 13(c) Agreement is separate from the CBA in that any Section 13(c) Agreement is subject to certification and approved by the Secretary of Labor. Clearly, COLTS argues that the Section 13(c) Agreement does not authorize interest arbitration of a successor CBA and that the trial court, based thereon, did not have jurisdiction to make such determination on the merits because "the question of the scope of the grievance arbitration procedure is for the arbitrator, at least in the first instance," quoting *Pittsburgh Joint Collective Bargaining Committee v. Pittsburgh*, 481 Pa. 66, 75, 391 A.2d 1318, 1323 (1978), and relying upon *Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 499 Pa. 62, 451 A.2d 671 (1982). COLTS focuses on the history of UMTA and stresses that the purpose of UMTA, which required the establishment of the Section 13(c) Agreement, was not implicated by the parties' negotiation for a successive CBA, and thus, requires that an arbitrator make the determination as to whether interest arbitration is allowed in the first instance.[8]

In *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union*, 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982), the U.S. Supreme Court was asked to determine whether Section 13(c) of the UMTA created a federal cause of action. While stating that Section 13(c) required the "preservation of benefits under existing collective-bargaining agreements and the continuation of collective-bargaining rights," *Id.* at 18, 102 S.Ct. at 2204, the Court *held* that the consistent theme running throughout Section 13(c) was that "Congress intended that labor relations between transit workers and local governments would be *controlled by state law.*" (Emphasis added.) *Id.* at 24, 102 S.Ct. at 2207.

*Northampton Area School District v. Skepton*, 138 Pa.Cmwlth. 574, 588 A.2d 1020, *appeal denied*, 529 Pa. 637, 600 A.2d 956 (1991).

---

**6.** It is clear from the record that negotiations for a successor CBA in no way related to the federal assistance COLTS has received under the UMTA.

**7.** Our review of a trial court decision is generally limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law has been committed, or whether the trial court abused its discretion.

**8.** The purpose of UMTA is that the "interest of employees affected by the assistance shall be protected." 49 U.S.C. § 5333(b).

While the Union cited the state court cases of *In Re Glover*, 137 Pa.Cmwlth. 429, 587 A.2d 25 (1991), *appeal denied*, 528 Pa. 633, 598 A.2d 286 (1991), and *Middle Bucks Area Vocational Technical School Education Association v. Executive Council of the Middle Bucks Area Vocational Technical School*, 122 Pa.Cmwlth. 595, 552 A.2d 763, appeal denied, 522 Pa. 606, 562 A.2d 828 (1989), as authority for the proposition that courts may determine whether there exists an agreement to arbitrate a dispute, in *Chester Upland School District v. McLaughlin*, 655 A.2d 621 (Pa. Cmwlth.1995), *aff'd per curiam*, —— Pa. ——, 675 A.2d 1211 (1996), we overruled these cases.[9]

In *Chester Upland*, our court en banc, compared the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301, with the Uniform Arbitration Act (UAA), 42 Pa.C.S. §§ 7301–7362. We held that parties could only rely on the UAA when its provisions were consistent with and supplemented PERA. Because the Supreme Court had interpreted PERA to require "grievance arbitration" be determined by the arbitrator in the first instance, *Pittsburgh Joint Collective* and *Bald Eagle*, we held in *Chester Upland* that PERA required the arbitration, overriding any implications of the UAA.[10]

 While *Chester Upland* is not a PERA case and concerns interest arbitration rather than grievance arbitration, it demonstrates the preference for provisions to be consistent and supplement each other. While no language in the Section 13(c) Agreement excludes interest arbitration of a successor CBA,[11] there is no such provision in the existing CBA or any reference to interest arbitration. Inclusion of an interest arbitration provision in a CBA is not a mandatory subject of bargaining under federal labor law. *National Labor Relations Board v. Columbus Printing Pressmen & Assistants' Union No. 252*, 543 F.2d 1161 (5th Cir.1976).[12]

In *Stockton Metropolitan Transit District v. Amalgamated Transit Union, Division 276*, 132 Cal.App.3d 203, 183 Cal.Rptr. 24 (1982), the court rejected the transit authority's argument that the pension and retirement provisions of the CBA were not arbitrable issues because "[p]ension and retirement provisions are typically issues which are subject to collective bargaining, and disputes arising therefrom are considered to be arbitrable under the provisions of a collective bargaining agreement. (*See Bressette v. International Talc Co., Inc.*, (2d Cir.1975) 527 F.2d 211, 216; *United Steelworkers of America v. General Steel Indus., Inc.*, (8th Cir. 1975) 499 F.2d 215, 219.)" 132 Cal.App.3d at 212, 183 Cal.Rptr. 24. In *Stockton Metropolitan*, the CBA did include provisions regarding pension and retirement benefits. Here, the existing CBA has no provisions regarding interest arbitration of a successor CBA.

---

**9.** COLTS cited *Chester Upland* as support for this Court's scope of review, but did not argue its possible implication here.

**10.** The construction of arbitration clauses in CBAs was announced in three decisions of the United States Supreme Court involving the Steelworkers Union and are known as the *Steelworkers Trilogy. See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *Pittsburgh Joint Collective*, our Supreme Court held that arbitration of disputes or grievances arising out of the interpretation of a CBA is mandatory and that this policy is even stronger than that embodied in federal labor policy.

**11.** "Just as parties can contract to arbitrate certain question they may also contract not to arbitrate in other areas." *East Pennsboro Area School District v. Pennsylvania Labor Relations Board*, 78 Pa.Cmwlth. 301, 467 A.2d 1356, 1358 (1983).

**12.** In *Division 1287, Amalgamated Transit Union, AFL–CIO v. Kansas City Area Transportation Authority*, 582 F.2d 444 (8th Cir.1978), the court held that the language of the Section 13(c) agreement compelled interest arbitration at the request of either party upon expiration of the CBA. The distinguishing fact from the case before us and *Division 1287*, is that the CBA there had an interest arbitration provision which does not exist here. We note, however, that the holding in *Division 1287* was essentially reversed by *Jackson Transit Authority*, which held that Section 13(c) of UMTA did not create a federal cause of action which the Eighth Circuit had permitted in *Division 1287*.

Further, in *Neshaminy Federation of Teachers v. Neshaminy School District*, 59 Pa.Cmwlth. 63, 428 A.2d 1023, 1025 (1981), *aff'd*, 501 Pa. 534, 462 A.2d 629 (1983), we held that "courts are not at liberty to require submission to arbitration unless the parties have agreed expressly to do so. The submission to arbitration is essentially a contract with the authority of the arbitrators derived from the mutual assent of the parties to the terms of submission." [13]

 Because the law in this Commonwealth is that the question of the scope of the arbitration procedure is for the arbitrator, at least in the first instance, *Pittsburgh Joint Collective*, [14] and because we must consider the provisions of both the existing CBA, which does not mention interest arbitration, as well as the application of the Section 13(c) Agreement, *Chester Upland*, we hold that the trial court did not have jurisdiction to order interest arbitration, [15] and that the issue of whether arbitration of a successor CBA is permissible under the existing CBA must first be determined by an arbitrator. [16]

Accordingly, we vacate and remand to the trial court for it to order an arbitrator to consider the issue and scope of arbitrability of the parties' negotiations for a successor CBA, and proceed consistent with the foregoing opinion.

### *ORDER*

AND NOW, this 9th day of July, 1996, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby vacated and remanded for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

---

13. Also, in *Hazleton Area School District v. Bosak*, 671 A.2d 277 (Pa.Cmwlth.1996), we held that the school district's complaint against Bosak & Associates alleged only professional negligence and not a breach of agreement and thus, was not subject to the arbitration provision in the agreement with the school district.

14. Once it is determined that the parties are obligated to submit the controversy to arbitration, all procedural questions which grow out of the dispute and affect the final disposition are left for the arbitrator. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). *See also School District of the City of Duquesne v. Duquesne Education Association*, 475 Pa. 279, 380 A.2d 353 (1977); *Kardon v. Portare*, 466 Pa. 306, 353 A.2d 368 (1976); *Shaler Area Education Association v. Shaler Area School District*, 61 Pa.Cmwlth. 211, 433 A.2d 168

(1981); *Rocca v. Pennsylvania General Insurance Co.*, 358 Pa.Superior Ct. 67, 516 A.2d 772 (1986), *appeal denied*, 517 Pa. 594, 535 A.2d 83 (1987).

15. COLTS makes an argument that peremptory judgment was improper because the issue was far from "clear" and numerous issues of material fact existed which should have precluded peremptory judgment. However, because of our disposition we need not address this issue.

16. On appeal from the arbitrator's decision on the arbitrability of the parties' negotiations for a successor CBA, the parties may raise additional issues concerning whether interest arbitration is proper, including whether it is constitutional under Article 3, Section 31 of the Pennsylvania Constitution. *See Erie Firefighters Local No. 293 of the International Association of Firefighters v. Gardner*, 406 Pa. 395, 178 A.2d 691 (1962).