[No. S088829. June 13, 2002.]

DACUS WADE ALLEN, Plaintiff and Appellant, v.
SULLY-MILLER CONTRACTING COMPANY, Defendant and
Respondent.

COUNSEL

Law Offices of Greg W. Garrotto and Greg W. Garrotto for Plaintiff and Appellant.

Kirtland & Packard and Robert A. Muhlbach for Defendant and Respondent.

OPINION

**BAXTER, J.**—Civil Code section 3333.4 (section 3333.4) was enacted through passage of Proposition 213 in the November 5, 1996 General Election. Known as The Personal Responsibility Act of 1996, Proposition 213 sought to restrict the ability of uninsured motorists, convicted drunk drivers, and convicted felons to recover for losses suffered in accidents.

In this case, an uninsured motorcyclist was injured in a single-vehicle accident while turning across an unmarked elevated "bus pad" on a public roadway. We shall address whether section 3333.4 bars the motorcyclist from recovering noneconomic losses in his premises liability action against the private construction company that maintained control over the roadway at the time of the accident. We conclude that it does.

### FACTUAL AND PROCEDURAL BACKGROUND

The City of Los Angeles (the City) hired Sully-Miller Contracting Company (Sully-Miller) as the prime contractor for certain road construction work, including street widening and the installation of concrete bus pads on the road at bus stop locations. Sully-Miller, in turn, subcontracted with Daniel J. Lopez Concrete Construction (Lopez Construction) to construct the bus pads. Sully-Miller retained responsibility for providing traffic control at the construction sites, which entailed the installation and maintenance of road barriers and delineators to warn motorists and others of ditches and uneven road surfaces.

One of the bus pads constructed by Lopez Construction was not level with the asphalt surface of the street; it rose three inches above the street surface in some places. On the night of August 13, 1996, there were no barricades or delineators marking the differentiated height of the pad when Dacus Wade Allen (Allen), who was driving his motorcycle, attempted to make a right-hand turn across the pad. Allen's tire caught on the elevated lip of the pad and his motorcycle fell, causing injuries to his knee.

Allen brought a negligence and premises liability action against the City, Sully-Miller, and Lopez Construction. On the day scheduled for trial, defendants moved to preclude the introduction of evidence of Allen's noneconomic

damages based on Allen's admission that he did not have liability insurance for his motorcycle at the time of the accident. The trial court granted the motion, finding the action subject to the restrictions of section 3333.4.

At the close of Allen's case, the trial court granted a nonsuit in favor of Lopez Construction. Subsequently, the jury found, by special verdict, that the public property in question was in a dangerous condition at the time of Allen's accident. Although the jury found that the City was not liable because it had no actual or constructive notice of the condition, it evidently accepted Allen's theory that Sully-Miller was negligent in failing to install barriers or delineators to warn of the elevated nature of the bus pad. Allen was not assessed with any comparative negligence. The jury awarded Allen $24,080 in economic damages for his medical expenses and lost earnings. The trial court entered judgment on the jury verdict and denied Allen's motion for a new trial.

The Court of Appeal reversed and remanded for a new trial. Relying on *Hodges v. Superior Court* (1999) 21 Cal.4th 109 [86 Cal.Rptr.2d 884, 980 P.2d 433] (*Hodges*), the appellate court concluded that section 3333.4 does not apply in an action for premises liability against a private entity.

We granted review and held the matter pending our decision in *Day v. City of Fontana* (2001) 25 Cal.4th 268 [105 Cal.Rptr.2d 457, 19 P.3d 1196] (*Day*), which involved the question whether section 3333.4 applied in an action against two local public entities for nuisance and dangerous condition of property.

After we decided *Day*, we ordered briefing limited to the issue whether section 3333.4 bars recovery of noneconomic losses in this premises liability action against a private construction company.

### DISCUSSION

Section 3333.4 provides in pertinent part: "(a) . . . [I]n any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies: [¶] . . . [¶] (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state. [¶] (3) The injured person was the operator of a vehicle involved in the

accident and the operator can not establish his or her financial responsibility as required by the financial responsibility laws of this state."[1]

In this case, the question is whether an action to recover damages arising out of a motor vehicle accident caused by a private construction company's negligent creation or maintenance of a dangerous road condition is an "action to recover damages arising out of the operation or use of a motor vehicle" within the meaning of section 3333.4, subdivision (a).

Where, as here, the issue presented is one of statutory construction, our fundamental task is "to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." (*Day, supra,* 25 Cal.4th at p. 272; see *People v. Trevino* (2001) 26 Cal.4th 237, 240 [109 Cal.Rptr.2d 567, 27 P.3d 283].) We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. (*People v. Trevino, supra,* 26 Cal.4th at p. 241.) We give the language its usual and ordinary meaning, and "[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day, supra,* 25 Cal.4th at p. 272.) If, however, the statutory language is ambiguous, "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Ibid.*) Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. (*Ibid.; Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].) Any interpretation that would lead to absurd consequences is to be avoided. (*Ibid.*)

Applying these rules of statutory construction, we conclude that Allen's action falls squarely within the terms of section 3333.4. First, Allen did not have liability insurance on his motorcycle at the time of the accident. Second, his action seeks to recover for damages that occurred when the tire of the uninsured motorcycle he was operating caught on an uneven street surface, causing his motorcycle to fall. The factual circumstances here raise no ambiguity or uncertainty as to the application of the statute, which precludes recovery of noneconomic damages "in any action to recover damages arising out of the operation or use of a motor vehicle" (§ 3333.4, subd. (a)), if the injured person was not insured as the owner or operator of the vehicle involved in the accident (*id.,* subd. (a)(2), (3)). Accordingly,

[1]Section 3333.4 additionally bars recovery of noneconomic losses if the injured person was driving under the influence of drugs or alcohol at the time of the accident and was convicted of that offense. (*Id.,* subd. (a)(1).) The statute provides one exception to its bar on recovery of noneconomic losses whereby an owner of an uninsured vehicle may recover such losses if he or she was injured by a motorist who was driving under the influence of drugs or alcohol and was convicted of that offense. (*Id.,* subd. (c).)

Allen "shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages." (*Id.*, subd. (a).)

■ We compare the instant action with the one at issue in *Day, supra*, 25 Cal.4th 268, which involved an uninsured motorcyclist who was struck by a car in an intersection. In that case, the jury determined that overgrown vegetation on public property surrounding the intersection had obstructed the motorists' views and contributed to the accident. Since such facts demonstrated "a necessary and causal relationship between the plaintiff's operation of his motorcycle and the accident for which he claimed the public entities were responsible," *Day* concluded that the plaintiff's action sought to recover damages arising out of the operation or use of that motor vehicle within the contemplation of section 3333.4. (*Day, supra*, 25 Cal.4th at p. 274.)

■ As in *Day*, the facts here establish "a necessary and causal relationship" between Allen's operation of his uninsured motorcycle and the accident for which he claims Sully-Miller was responsible by virtue of its negligence in creating or maintaining a dangerous road condition. Just as in *Day*, then, Allen may recover for his economic losses, but he is statutorily barred from seeking noneconomic recovery.

Contrary to the assertions of Allen and the dissenting justices, neither *Hodges, supra*, 21 Cal.4th 109, nor *Horwich v. Superior Court* (1999) 21 Cal.4th 272 [87 Cal.Rptr.2d 222, 980 P.2d 927], compels a different construction. In both cases, we found the language of section 3333.4, subdivision (a) ambiguous with respect to the particular factual circumstances before us. (*Hodges, supra*, 21 Cal.4th at p. 113; *Horwich v. Superior Court, supra*, 21 Cal.4th at p. 277.) ■ In *Hodges*, which involved an uninsured plaintiff's action against the manufacturer of a defective vehicle, there was no necessary connection between the plaintiff's "operation or use" of a vehicle and the injuries he suffered. ■ In *Horwich v. Superior Court*, recovery of noneconomic damages was sought by "a person" who was not the uninsured owner or operator of the vehicle involved in the accident. Since the facts in those cases raised uncertainty as to the statute's application, we consulted the ballot materials accompanying Proposition 213 to determine whether section 3333.4 was intended to restrict the subject actions. (See *Day, supra*, 25 Cal.4th at p. 273.) Review of such materials led us to conclude the statute was inapplicable on the facts presented.

■ As explained in *Day, supra*, 25 Cal.4th 268, actions seeking damages for vehicular accidents caused by dangerous road conditions are an

entirely different matter. In such actions, a necessary and causal relationship generally exists between the uninsured motorist's use or operation of a vehicle and the accident that occurs. (See *Day, supra,* 25 Cal.4th at p. 274.) Not only do actions of this sort fall squarely within a fair and objective reading of section 3333.4's terms, but allowing such actions advances, rather than defeats, the legislation's declared purpose to " 'change the system that rewards individuals who fail to take essential personal responsibility' and to 'restore balance to our justice system.' " (*Day, supra,* 25 Cal.4th at p. 276.)

And as *Day* emphasized, nothing in *Hodges* implied the contrary. (*Day, supra,* 25 Cal.4th at pp. 279-282.) Thus, while *Hodges* observed that a *primary* aim of Proposition 213 was to limit automobile insurance claims by uninsured motorists against insured motorists, that decision did not suggest it was the initiative's *exclusive* aim. (*Day, supra,* 25 Cal.4th at p. 280.)

Allen points out that in *Day,* we observed in a footnote that some of the plaintiff's arguments in the case had assumed that section 3333.4 did not apply to premises liability actions against owners of private property. (*Day, supra,* 25 Cal.4th at p. 282, fn. 8.) But because *Day* did not involve the liability of a private property owner, we declined to address "such arguments or the possibility that other concerns may justify a different result" in the case of private owners. (*Ibid.*)

Seizing on that footnote, Allen contends there are several distinctions between his property-related action against Sully-Miller and the property-related action in *Day.* First, he argues, the fact that Sully-Miller's negligence in maintaining the construction site was the *sole* legal cause of his accident distinguishes his action from the one in *Day,* wherein liability for the plaintiff's damages was apportioned between a second motorist (52 percent) and the two public entities responsible for the nuisance and dangerous condition (48 percent, cumulatively). (See *Day, supra,* 25 Cal.4th at p. 272.) Second, the legislative history of section 3333.4, he claims, offers no basis for concluding that the statute encompasses actions involving injury caused by the ownership, occupation, or maintenance of private, as opposed to public, property.[2]

Upon careful review of *Day* and the statutory language and history, we perceive no legitimate basis for distinguishing Allen's action from the action in *Day* in assessing section 3333.4's application. *Day*'s holding did not turn upon the factual circumstance that a second motorist was partly at fault. Rather, its analysis focused on the particular action against the public entity

---

[2]Strictly speaking, the action here does not involve private property. Rather, it involves a private party that occupied public property while making improvements to the property.

defendants and determined that the action, which sought recovery under the theories of nuisance and dangerous condition of public property, was reasonably viewed as having arisen out of the plaintiff's operation or use of his uninsured motorcycle. (*Day, supra,* 25 Cal.4th at pp. 273-274, 280.)

More importantly, we find no evidence of legislative intent supporting Allen's proposal to carve out a private entity or private property exception to section 3333.4's application. The statutory language makes no distinction between public entity and private entity defendants in precluding recovery for noneconomic losses. To the contrary, section 3333.4 explicitly bars recovery of such losses *"in any action* to recover damages arising out of the operation or use of a motor vehicle" *(id.,* subd. (a), italics added), where the injured person was the owner of an uninsured vehicle involved in the accident or was the vehicle operator and cannot properly establish his or her financial responsibility *(id.,* subd. (a)(2), (3)).

Likewise, nothing in the legislative history of the provision, as reflected in the ballot materials accompanying Proposition 213, suggests an intent to differentiate between public defendants and private defendants, or between dangerous conditions on public property and private property. Although Allen correctly notes that the ballot materials contained a specific reference to the initiative's impact upon public entities (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) Legis. Analyst's analysis of Prop. 213, p. 49), the broad statutory language ("in any action") leaves no doubt that section 3333.4 applies in all actions where the statutory prerequisites are met, including those actions brought against private persons and entities. (§ 3333.4, subd. (a).) Conversely, the implication of Allen's alternative construction is that the phrase "in any action to recover damages arising out of the operation or use of a motor vehicle" *(ibid.)* would have one meaning for the public entity that owned the uneven roadway and a different meaning for the private contractor that exercised control over it. Such an illogical and inconsistent reading of the statute cannot be what the voters intended.

In the final analysis, Allen stands in the same position as the plaintiff in *Day.* He drove his motorcycle in violation of the state financial responsibility law and got into an accident because of a roadway condition. He seeks to hold another financially responsible for his economic and noneconomic damages, even though he himself, as an uninsured motorist, could have avoided financial responsibility for any damages had he caused an accident while on the road. Even if Sully-Miller did not own the property where the elevated bus pad was situated, but merely occupied it, construing section 3333.4 to apply in circumstances such as these substantially advances, rather than defeats, the statute's general purpose to restore balance to the justice

system with respect to violators of the financial responsibility law. (See *Day, supra,* 25 Cal.4th at p. 276.)

DISPOSITION

We conclude that section 3333.4 bars Allen from recovering noneconomic damages in his action against Sully-Miller. The judgment of the Court of Appeal is reversed and the matter is remanded to that court for further proceedings consistent with the views expressed herein.

George, C. J., Werdegar, J., Chin, J., and Brown, J., concurred.

**KENNARD, J.,** Dissenting.—Civil Code section 3333.4, an initiative measure that the voters passed in 1996, precludes uninsured motorists who are injured in accidents from recovering noneconomic damages for their pain and suffering.[1] In *Day v. City of Fontana* (2001) 25 Cal.4th 268 [105 Cal.Rptr.2d 457, 19 P.3d 1196] (*Day*), a majority of this court applied that provision against two public entities that failed to correct or warn of a dangerous condition on public land. I disagreed and joined Justice Stanley Mosk's dissent. Today, relying on *Day*, the majority applies section 3333.4 in an action against private contractors responsible for a dangerous property condition. Again, I dissent.

The front tire of plaintiff's motorcycle caught on a three-inch high elevated lip of a bus pad defendants built on Bundy Drive at Santa Monica Boulevard for the City of Los Angeles. The motorcycle slipped and plaintiff fell on his kneecap. The majority bars recovery for the pain and suffering plaintiff experienced from the injury. But as Justice Mosk pointed out in *Day*, the voters who enacted section 3333.4 "did not intend to limit damages for injuries to motorists based on a dangerous condition of property . . . ." (*Day, supra,* 25 Cal.4th at p. 283 (dis. opn. of Mosk, J.).)

Drawing on this court's earlier decision in *Hodges v. Superior Court* (1999) 21 Cal.4th 109 [86 Cal.Rptr.2d 884, 980 P.2d 433] (*Hodges*), Justice Mosk explained in *Day* that the voters' intent in enacting section 3333.4 was "to resolve inequities involving the allocation of costs *between motorists who carry automobile liability insurance and motorists who do not.*" (*Day, supra,* 25 Cal.4th at p. 285 (dis. opn. of Mosk, J.).) "The former—scofflaw uninsured motorists—are held accountable as both a punishment and incentive" by the limitation on damages; "the latter—motorists who obey the financial responsibility laws—are the beneficiaries" because they are relieved of paying noneconomic damages for injuries to uninsured motorists. (*Ibid.*)

---

[1] Further undesignated statutory references are to the Civil Code.

Justice Mosk also noted that in *Hodges* this court "found nothing in [section 3333.4's] ballot materials suggesting 'that such punishment or incentive was also intended—or should be permitted—to benefit' other defendants 'not reasonably included among "those who play by the rules" or "take personal responsibility" or "pick up the tab" for the "skyrocket[ing]" costs of automobile insurance.' " (*Day, supra*, at p. 285 (dis. opn. of Mosk, J.).)

I agreed with Justice Mosk's dissent in *Day* that it "follow[ed] ineluctably from our analysis in *Hodges*" that liability for a dangerous condition on public property did not come "within the purview of Civil Code section 3333.4." (*Day, supra*, 25 Cal.4th at p. 285 (dis. opn. of Mosk, J.).) Public entities that fail to maintain a safe roadway and do not "contribute to the relevant insurance pool" are not "among those who 'play by the rules' or 'take personal responsibility' or 'pick up the tab' for skyrocketing automobile insurance costs." (*Ibid.*) Justice Mosk also stressed that public policy was better served by fully "[c]ompensating the victims of injuries caused by unsafe design or maintenance of public streets" because doing so would "operate[] as a strong incentive for cities and counties to prevent or abate dangerous conditions, thus minimizing risks to the public." (*Day, supra*, 25 Cal.4th at p. 285.)

So too in this case in which the duty to prevent or abate a dangerous condition on property fell to private contractors rather than public entities. The majority's holding here weakens the incentive for such contractors to protect the motoring public from dangerous roadway conditions that the contractors themselves have created. Furthermore, the majority's holding is contrary to the voters' intent in enacting section 3333.4's limitation on damages. Accordingly, I dissent.

**MORENO, J.,** Dissenting.—The majority's expansive interpretation of Proposition 213, enacted as Civil Code section 3333.4 (section 3333.4), produces a result that surely was not contemplated by the voters who passed this initiative. According to the majority, a private contractor that maintains a dangerous condition on property is excused from bearing the cost of injuries caused by its negligent behavior when the injured party happens to be an uninsured motorist. Because there is no suggestion in either the language or the legislative history of section 3333.4 that it was intended to apply in the case of a negligent private contractor, I respectfully dissent.

The majority reaches its conclusion by relying on our decision in *Day v. City of Fontana* (2001) 25 Cal.4th 268 [105 Cal.Rptr.2d 457, 19 P.3d 1196] (*Day*), where we held that under section 3333.4, an uninsured motorist is precluded from recovering noneconomic damages in an action against a

public entity. I disagree for three reasons. First, I question the *Day* majority's broad reading of Proposition 213, given our previous discussion of this initiative in *Hodges v. Superior Court* (1999) 21 Cal.4th 109 [86 Cal.Rptr.2d 884, 980 P.2d 433] (*Hodges*) and *Horwich v. Superior Court* (1999) 21 Cal.4th 272 [87 Cal.Rptr.2d 222, 980 P.2d 927] (*Horwich*). Instead, I agree with the dissent in *Day* that the intent of the voters in passing Proposition 213 was to benefit motorists who obey the financial responsibility laws and not to insulate negligent public entities from liability. (*Day, supra*, 25 Cal.4th at pp. 285-286 (dis. opn. of Mosk, J.).) Second, I believe that *Day* is distinguishable from the present case. The position of the negligent private contractor in this case is more similar to that of an automobile manufacturer, which in *Hodges* we found was not protected by section 3333.4, than to a public entity, which in *Day* we determined was protected by the provisions of section 3333.4. Third, I find that the majority's decision implicates serious public policy concerns that should preclude the extension of our holding in *Day* to insulate a private contractor from liability for noneconomic damages. For these reasons, I conclude that section 3333.4 does not prevent an uninsured motorist from recovering noneconomic damages from a negligent private contractor.

I.

On August 13, 1996, Dacus Wade Allen was injured in a single-vehicle accident as he attempted to make a right turn across an elevated concrete bus pad, which was under construction. The front tire of his motorcycle caught on a three-inch raised lip of the concrete pad. Allen's motorcycle slipped from under him and fell onto his knee, injuring him.

The City of Los Angeles had awarded Sully-Miller Contracting Company (Sully-Miller) a contract to perform certain road construction work at the site of Allen's accident. Sully-Miller had entered into a subcontract with Daniel J. Lopez Concrete Construction (Lopez Construction) to provide concrete work, including the construction of bus pads. Sully-Miller, as the prime contractor, was responsible for traffic control, including the installation and maintenance of road barriers to mark uneven road surfaces to protect both motorists and pedestrians from injury. Prior to the accident in this case, the City of Los Angeles's project inspector had issued three written warnings to Sully-Miller regarding deficiencies in its traffic control plan, including the lack of barriers necessary to protect vehicular and pedestrian traffic. On August 13, 1996, the date of the accident in this case, the disparity in height between the road surface and the bus pad had existed for at least 11 days.

Allen brought a personal injury and premises liability action against Sully-Miller, Lopez Construction, and the City of Los Angeles. On the day

of trial, defendants sought an order barring Allen from presenting evidence of general damages based on his admission that he did not have automobile liability insurance at the time of the accident. The trial court granted defendants' motion and, at the close of Allen's evidence, granted a nonsuit in favor of Lopez Construction. The jury returned a defense verdict in favor of the City of Los Angeles, but it found Sully-Miller liable, and awarded Allen $20,480 in medical expenses and $3,600 in lost earnings. The jury found that Allen was not comparatively negligent. The trial court entered judgment on the jury verdict.

The Court of Appeal reversed and remanded for a new trial, to permit Allen to present evidence of his noneconomic damages. In a decision filed before we issued our opinion in *Day*, the Court of Appeal applied our analysis of section 3333.4 in *Hodges*. The Court of Appeal determined: "There is no indication either the electorate or the sponsors of Proposition 213 intended to protect from premises liability claims road construction companies who do not contribute to the automobile insurance pool and whose other insurance rates are not affected by the existence of uninsured motorists." Thus, the Court of Appeal concluded that section 3333.4 did not preclude Allen from recovering noneconomic damages from a private contractor.

## II.

I disagree with the majority's determination that the present action falls squarely within the language of section 3333.4. Instead, as we have previously concluded in both *Hodges, supra,* 21 Cal.4th 109, and *Horwich, supra,* 21 Cal.4th 272, the statutory language is ambiguous; therefore, we must look to the legislative history to determine whether Proposition 213 was intended to apply to a premises liability action against a private contractor.

In *Hodges*, the first case in which we interpreted section 3333.4, we found that the language of section 3333.4, specifically the phrase "any action to recover damages arising out of the operation or use of a motor vehicle," was "not pellucid." (*Hodges, supra,* 21 Cal.4th at p. 113.) The majority in the present case contends that in *Hodges* we found the statutory language of section 3333.4, subdivision (a) ambiguous only with respect to a products liability action against an automobile manufacturer. I disagree. While in *Hodges* the statutory ambiguity revealed itself in the context of a products liability action against a manufacturer, it was the language itself, specifically the phrases "arising out of" and "operation or use," that we found to be unclear. (*Hodges,* at p. 113 ["Nor, as we have previously observed, is the sense of the phrase 'arising out of' transparent."].) Given this ambiguity, we

looked to the legislative history to discern whether the voters intended Proposition 213 to apply in the case of an action against an automobile manufacturer. (*Hodges*, at p. 114.)

In *Horwich*, we again determined that the language in section 3333.4 was " 'not pellucid,' " this time with respect to the words "person" and "injured person." (*Horwich, supra,* 21 Cal.4th at p. 277.) We further stated that " ' "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.]' " (*Id.* at p. 276.) As in *Hodges*, it was the vagueness of the language itself, rather than the facts of the case, that made us look beyond the words of the provision to the legislative history in order to determine its intended scope. (*Horwich*, at p. 277.)

In *Day*, a majority of this court found that the action in that case, in which an uninsured motorist sought to recover noneconomic damages from a public entity for nuisance and dangerous condition of property, fell within the terms of section 3333.4. (*Day, supra,* 25 Cal.4th at p. 273.) The *Day* court stated that since there was a "necessary and causal relationship" (*id.* at p. 274) between the operation of the vehicle by an uninsured motorist and the accident for which the motorist sought damages, section 3333.4 barred recovery of noneconomic damages. The majority in the present case applies the same analysis, determining that the action brought by Allen falls within the statutory language because of the "necessary and causal relationship" between his operation of the motorcycle and the accident for which he seeks damages. (§ 3333.4.)

I find that the "necessary and causal relationship" test developed by the court in *Day* and applied in this case broadens the reach of the statute beyond what is supported by either its language or its legislative history. The majority seeks to replace the ambiguous statutory language, "arising out of the operation or use of a motor vehicle," by reading a "necessary and causal relationship" test into the statute. (§ 3333.4, subd. (a).) However, the majority provides no support, other than our statement in *Day*, to show why we should read such an expansive test into the statutory language. Moreover, the majority's "necessary and causal relationship" test is just as indeterminate as the ambiguous statutory language it seeks to replace.

Rather than reading additional language into the statute, we should look to the legislative history of Proposition 213 to determine the intent of the voters. As we said in *Hodges*: "We do not interpret the meaning or intended application of a legislative enactment in a vacuum. In the case of a voters'

initiative statute, too, we may not properly interpret the measure in a way that the electorate did not contemplate: the voters should get what they enacted, not more and not less." (*Hodges, supra,* 21 Cal.4th at p. 114.)

Our opinions in *Hodges, Horwich,* and *Day* all cite extensively from Proposition 213's statement of legislative purpose, as well as the ballot arguments for and against the initiative. It is clear from these statements that the principal intended beneficiaries of Proposition 213 were Californians who obey the financial responsibility laws. (*Hodges, supra,* 21 Cal.4th at p. 115.) The initiative was fueled by a "principle of fairness." (*Ibid.*) In passing Proposition 213, "[t]he electorate wanted to ensure that uninsured motorists, who contribute nothing to the insurance pool, would be restricted in what they receive from it." (*Hodges,* at p. 115.) The initiative would protect insured motorists, who would not be forced to pay higher premiums in order to compensate uninsured motorists.

Proposition 213, then, was meant to "restore balance to our justice system" by remedying the unfairness that occurs between insured and uninsured motorists. (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) text of Prop. 213, § 2, p. 102.) There is simply no suggestion in the legislative history that Proposition 213 was intended to bar an uninsured motorist from recovering damages from a negligent private entity. (See *Hodges, supra,* 21 Cal.4th at p. 116 ["no suggestion that [Proposition 213] was intended to apply in the case of a vehicle design defect"]; *Horwich, supra,* 21 Cal.4th at p. 280 ["no mention" in the legislative history that the heirs of an uninsured motorist would be barred from recovering noneconomic damages].) Therefore, I conclude that section 3333.4 does not bar such a recovery.

## III.

Even if this court in *Day* were correct in deciding that an uninsured motorist cannot recover noneconomic damages from a public entity, it does not follow that section 3333.4 should also apply to suits against a negligent private contractor. Instead, the present suit is similar to a suit against an automobile manufacturer, which in *Hodges* we determined fell outside the scope of section 3333.4. In *Day,* we found it significant that the negligent defendant was a *public* entity. We noted that "[p]ublic entities, many of which provide the transportation infrastructure for the motoring public, are among those directly affected by motorists who violate the financial responsibility law." (*Day, supra,* 25 Cal.4th at p. 275.) We further observed that "[m]otorists who drive in violation of [the financial responsibility] law and negligently cause damage to roadways and other public property, however, typically fail to compensate for the damage; in such circumstances, public

entities wind up paying for repairs to their property while the uninsured tortfeasors escape responsibility for their actions." (*Id.* at pp. 280-281.)

The negligent private contractor here is not directly affected by motorists who violate the financial responsibility law. Unlike public entities, private contractors have no obligation to maintain the state's roadways. Additionally, unlike in *Day*, the private contractor in this case was the sole negligent party; the injured motorist was found not to be negligent and he did not damage any property in sustaining his injuries.

Further, while the legislative history of Proposition 213 does mention its potential effect on public entities, there is no discussion of the initiative's effect on a private entity, such as a private contractor. The ballot materials indicate that voter approval of Proposition 213 would "result in fewer lawsuits filed against state and local governments"; the materials also refer to "unknown savings to state and local governments as a result of avoiding these lawsuits." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) analysis of Prop. 213, p. 49.) These same ballot materials make no mention whatsoever of private entities, indicating that this initiative was not intended to affect the liability of private entities.

In fact, the position of the private contractor in this case is quite similar to that of the automobile manufacturer in *Hodges*. In *Day*, we distinguished *Hodges*: "While *Hodges* placed emphasis on the absence of any effect on the particular defendant's insurance costs, it must be remembered that the defendant there, in its capacity as a car manufacturer, faced no potential of direct harm to itself or its property from uninsured drivers who failed to comply with the state financial responsibility law. In that case, the consideration that car manufacturers also had no insurance rates affected by the existence of uninsured motorists was significant to our conclusion that manufacturers of defective cars were not among those whom the initiative was intended to protect." (*Day, supra*, 25 Cal.4th at p. 281, fn. omitted.)

Similar distinguishing facts are present here. The private contractor in this case, having negligently failed to erect safety barriers, was not harmed by the actions of the uninsured motorist. Additionally, requiring a private entity such as Sully-Miller to pay noneconomic damages when it is negligent will not impact either the public fisc or the insurance pool. For these reasons, even if public entities are protected under section 3333.4, damage suits against private contractors fall outside the purview of the statute.

## IV.

There is no dispute in this case that Sully-Miller was negligent in failing to install and maintain safety barriers. Further, there is no disagreement that

Allen's accident, and his related injuries, were caused by Sully-Miller's negligence. Under traditional tort principles, if Allen had been injured as an insured motorist, or as a passenger in a vehicle, or as a pedestrian, or as anyone else, Sully-Miller would certainly be required to fully compensate him. Yet the majority holds that Allen cannot recover noneconomic damages from this accident solely because he was an uninsured motorist. I find this holding to be in conflict with the long-standing public policy goal of requiring private parties who maintain dangerous conditions on property to bear the costs of injuries from their negligent behavior. (See *Hodges, supra*, 21 Cal.4th at p. 118 [declining to read § 3333.4 to protect manufacturers of defective cars, to further the public policy goal of requiring manufacturers to bear the costs of injuries from their defective products].)

As we articulated in *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], "[a]lthough it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy." (*Id.* at p. 112.) Here, there is no indication in either the statutory language or the legislative history that Proposition 213 was intended to alter the general principles of tort liability. (See *Hodges, supra*, 21 Cal.4th at p. 115 ["It is not clear that *anyone*—either the sponsors of the measure or the voters—intended to protect from products liability claims manufacturers who do not contribute to that pool and whose other insurance rates are not affected by the existence of uninsured motorists."].)

Further, the result in this case does not further the "principle of fairness" that "fueled the initiative." (*Hodges, supra*, 21 Cal.4th at p. 115.) In fact, the majority's holding produces the opposite result, providing a windfall to a negligent private contractor at the expense of an innocent motorist. Instead, holding private contractors liable for injuries caused to *all* motorists would benefit insured motorists, since it would provide additional incentives for these entities to provide adequate safety precautions.

In *Hodges*, we found that "the express goal of the initiative statute was restoring balance to the system, not simple retribution." (*Hodges, supra*, 21 Cal.4th at p. 117.) Preventing uninsured motorists from recovering damages at the expense of insured motorists restores such a balance to the system. Insulating private entities that maintain dangerous conditions on property from paying damages simply because the injured party happens to be an uninsured motorist does not restore balance to the system. Instead, by

shielding the negligent private contractor from responsibility, the majority's holding unbalances the system and serves no purpose other than simple retribution.