181 Cal.App.4th 50 (2010)
103 Cal.Rptr.3d 715
Adoption of M.S., a Minor.
ELEANOR P. et al., Plaintiffs and Appellants,
v.
STATE DEPARTMENT OF SOCIAL SERVICES, Defendant and Respondent.
No. C060992.
Court of Appeals of California, Third District.
January 19, 2010.
*52 Law Offices of Richard G. Fathy and Richard G. Fathy for Plaintiffs and Appellants.
Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Julie Weng-Gutierrez and Niromi L. Wijewantha, Deputy Attorneys General, for Defendant and Respondent.

OPINION
SIMS, J.
This is a tragic case in which there can be no good ending for anyone.
Appellants Eleanor P. and Martin S. appeal from an order denying their petition to set aside their Ukrainian adoption of a Ukrainian girl, M.S. The petition was opposed by the State Department of Social Services (the Department or DSS). Appellants contend the trial court erred in construing *53 Family Code section 9100,[1] which authorizes the court to vacate adoptions, as inapplicable to an "intercountry adoption" completed in Ukraine.[2]
This is a case with equities on both sides. However, when we apply the governing statutes enacted by the Legislature, we conclude the trial court was correct. We shall affirm the judgment.[3]

FACTUAL AND PROCEDURAL BACKGROUND
In early 2003, appellants began the process to adopt a foreign-born child. Appellants engaged a California lawyer and a private California adoption agency, Heartsent Adoptions, Inc. (Heartsent), which was licensed by the Department to provide noncustodial intercountry adoption services.
In late 2003, appellants spent several weeks in Ukraine for the adoption. On December 15, 2003, by decree of a Ukrainian court, appellants adopted M.S., a three-year-old Ukrainian girl. The Ukrainian court decree stated in part: "It was found out from the case documents that the child's [biological] mother is mentally sick. She left the child at the hospital and never visited her. The place of father's residence was not identified. Since *54 February 2002 the child has been made the ward of the government. The medical history of the girl says that she is almost healthy though psychologically delayed." A hospital record says the mother has epilepsy.
Appellants' declarations assert they believed M.S. was healthy, were not aware of this medical background information until after the adoption was finalized, and the documents were not translated for them until after the adoption was completed.
Appellants brought M.S. to live in their Davis home. They did not "readopt" M.S. in California, as authorized by section 8919.[4]
*55 In California, various evaluations were performed due to M.S.'s low level of functioning. Health care professionals diagnosed her with spastic cerebral palsy, reactive attachment disorder, oppositional defiance disorder, moderate mental retardation, global developmental delay, ataxia, fetal alcohol syndrome or effect, microcephaly, and posttraumatic stress disorder. Appellants assert M.S. cannot live in a normal home environment, is unadoptable, and has been living in intensive foster care placement in Arizona since 2005.
On May 20, 2008, appellants filed in Yolo County Superior Court a "MOTION TO SET ASIDE ORDER OF ADOPTION UNDER FAMILY CODE SECTION 9100" (the petition). This petition was served on the Department, which filed an opposition. The opposition argued section 9100 is inapplicable to intercountry adoptions; the statutory remedy is not appropriate because the child could not be returned to Ukraine; the records gave notice of potential problems; and the Department did not have access to underlying investigative reports or documentation it would need to fulfill its obligation to make a full report to the court.
On October 31, 2008, after hearing oral argument, the superior court[5] issued an "ORDER DENYING PETITION TO SET ASIDE INTERCOUNTRY ADOPTION PURSUANT TO FAMILY CODE SECTION 9100." The order denied the petition on the ground the court lacked jurisdiction to make a ruling on the matter.[6]

DISCUSSION

I. Standard of Review

(1) "Where, as here, the issue presented is one of statutory construction, our fundamental task is `to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citations.] We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and `[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.]" (Allen v. Sully-Miller Contracting Co. (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].)

*56 II. Section 9100

Appellants cite no legal authority for undoing the Ukraine adoption except section 9100 (fn. 1, ante).
(2) Section 9100 authorizes the superior court to vacate an adoption of a child "adopted pursuant to the law of this state."
Appellants contend the superior court erred in construing section 9100's language "pursuant to the law of this state" to mean that an adoption must have occurred within California's borders in order to be afforded section 9100 relief to vacate the adoption.
(3) However, the language of section 9100 itself, plus the language of a companion statutesection 9101clearly show that section 9100 is limited to undoing adoptions that were granted by California state courts.[7]
(4) Thus, section 9100 says a petition under that section "may be filed ... with the court that granted the adoption petition." (See fn. 1, ante.) "`"It is a conceded principle, that the laws of a state have no force, proprio vigore,[[8]] beyond its territorial limits . . . ."'" (Estate of Lund (1945) 26 Cal.2d 472, 489 [159 P.2d 643].) With this in mind, the California Legislature surely did not intend to legislate court filings in a Ukrainian court. We therefore infer "the court that granted the adoption petition" in section 9100 must be a California state court. (5) Moreover, when two statutes touch upon a common subject, they are to be construed in reference to each other. (San Leandro Teachers Assn. v. Governing Bd. of San Leandro Unified School Dist. (2009) 46 Cal.4th 822, 836 [95 Cal.Rptr.3d 164, 209 P.3d 73].) (6) In the event an adoption is vacated under section 9100, section 9101[9] places responsibility for the support of the now unadopted child on "[t]he county in which the proceeding for adoption was had." In this case, there is no such county in California, and the California Legislature obviously has no power to order a Ukrainian county (if such even exists) to support the child. Where section 9100 requires the petition to be filed "with the court that *57 granted the adoption petition," the reference is to a court within the State of California. In this case, the petition was not filed "with the court that granted the adoption petition." Accordingly, the Yolo County Superior Court correctly ruled that it had no authority to adjudicate the petition.
Appellants offer two main arguments against our conclusion.
First, they say that where section 9100 provides that a petition "may be filed . . . with the court that granted the adoption petition," the word "may" is permissive, not mandatory. Section 12 provides, "`[s]hall' is mandatory and `may' is permissive." In other words, appellants argue section 9100 does not require a petition to be filed "with the court that granted the adoption petition."
For reasons that follow, we do not agree.
The sentence in which the word "may" occurs is as follows: "(a) If a child adopted pursuant to the law of this state shows evidence of a developmental disability or mental illness as a result of conditions existing before the adoption to an extent that the child cannot be relinquished to an adoption agency on the grounds that the child is considered unadoptable, and of which conditions the adoptive parents or parent had no knowledge or notice before the entry of the order of adoption, a petition setting forth those facts may be filed by the adoptive parents or parent with the court that granted the adoption petition." (§ 9100.)
In this sentence, the word "may" is used in the permissive sense of giving a parent or parents discretion whether to file a petition under section 9100. This is in stark contrast to section 8919 (see fn. 4, ante), which requires a readoption of a child adopted in a foreign country "if it is required by the Department of Homeland Security."
So, by its use of "may," section 9100 makes clear that the parent or parents have discretion whether to file a petition under that statute.
(7) However, once the decision is made to file a petition, the petition must be filed "with the court that granted the adoption petition." This is the only construction that makes sense. No other court is designated as the proper place for the filing of a petition. If the petition could be filed in any court, then reference to "the court that granted the adoption petition" would be *58 unnecessary. Moreover, since the petition seeks to unadopt a child, it is only reasonable to require the petition to be filed in the court that has the records of the original adoption. Thus, if a petition under section 9100 is filed, it must be filed "with the court that granted the adoption petition."
Appellants next argue that section 9100 should receive a liberal construction. (See Department of Social Welfare v. Superior Court (1969) 1 Cal.3d 1, 6 [81 Cal.Rptr. 345, 459 P.2d 897].)
(8) However, the doctrine of "liberal construction" has its limits. "As a rule, a command that a constitutional provision or a statute be liberally construed `does not license either enlargement or restriction of its evident meaning' (People v. Cruz (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250])." (Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles (2001) 24 Cal.4th 830, 844 [102 Cal.Rptr.2d 719, 14 P.3d 930].) Whatever may be thought of the wisdom, expediency, or policy of a statute, we have no power to rewrite the statute to make it conform to a presumed intention that is not expressed. (Morillion v. Royal Packing Co. (2000) 22 Cal.4th 575, 585 [94 Cal.Rptr.2d 3, 995 P.2d 139].) In our view, appellants are asking us to rewrite the statutory scheme. This we will not do.
(9) For these reasons, then, we conclude that section 9100 applies only to adoptions granted by a California state court. This is the law that must be applied in this difficult case.[10] The trial court correctly found that section 9100 could not be used to undo the Ukrainian adoption.

III. Withdrawal of Contention Regarding Readoption

In their opening brief, appellants argued in the alternative that they should be allowed to amend the pleading to readopt the child in California under section 8919 (with the intent that they would then petition to set aside the adoption under § 9100). In their reply brief, appellants withdraw this argument, and we therefore need not address it.

*59 DISPOSITION
The judgment (order) is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)
Scotland, P. J., and Hull, J., concurred.
NOTES
[1] Undesignated statutory references are to the Family Code.

Section 9100 provides: "(a) If a child adopted pursuant to the law of this state shows evidence of a developmental disability or mental illness as a result of conditions existing before the adoption to an extent that the child cannot be relinquished to an adoption agency on the grounds that the child is considered unadoptable, and of which conditions the adoptive parents or parent had no knowledge or notice before the entry of the order of adoption, a petition setting forth those facts may be filed by the adoptive parents or parent with the court that granted the adoption petition. If these facts are proved to the satisfaction of the court, it may make an order setting aside the order of adoption. [¶] (b) The petition shall be filed within five years after the entry of the order of adoption. [¶] (c) The court clerk shall immediately notify the department at Sacramento of the petition. Within 60 days after the notice, the department shall file a full report with the court and shall appear before the court for the purpose of representing the adopted child."
[2] An "intercountry adoption" is "the adoption of a foreign-born child for whom federal law makes a special immigration visa available. Intercountry adoption includes completion of the adoption in the child's native country or completion of the adoption in this state." (§ 8527.)
[3] The Department has requested that we take judicial notice of (1) appellants' subsequent petition asking the superior court to approve a "readoption" of M.S.; (2) appellants' simultaneous petition to vacate the (re)adoption; (3) a Senate Rules Committee analysis of 1992 legislation (Assem. Bill No. 2840 (1991-1992 Reg. Sess.)); (4) Assembly Committee on Human Services notes regarding the 1992 legislation; and (5) Senate Committee on Judiciary notes on the 1992 legislation. We grant the request as to the legislative history (items 3, 4 & 5), but we deny the request as to items 1 and 2 because appellants' reply brief withdraws their contention about readoption and attaches a dismissal of those petitions. We previously granted in part appellants' request for judicial notice of legislative history from 1990. Suffice it to say that nothing in the legislative history undercuts the interpretation of section 9100 that we derive from the statutory language.
[4] Section 8919 provides: "(a) Each state resident who adopts a child through an intercountry adoption that is finalized in a foreign country shall readopt the child in this state if it is required by the Department of Homeland Security. Except as provided in subdivision (c), the readoption shall include, but is not limited to, at least one postplacement in-home visit, the filing of the adoption petition, the intercountry adoption court report, accounting reports, the home study report, and the final adoption order. If the adoptive parents have already completed a home study as part of their adoption process, a copy of that study shall be submitted in lieu of a second home study. No readoption order shall be granted unless the court receives a copy of the home study report previously completed for the international finalized adoption by an adoption agency authorized to provide intercountry adoption services pursuant to Section 8900. The court shall consider the postplacement visit or visits and the previously completed home study when deciding whether to grant or deny the petition for readoption.

"(b) Each state resident who adopts a child through an intercountry adoption that is finalized in a foreign country may readopt the child in this state. Except as provided in subdivision (c), the readoption shall meet the standards described in subdivision (a).
"(c)(1) A state resident who adopts a child through an intercountry adoption that is finalized in a foreign country with adoption standards that meet or exceed those of this state, as certified by the State Department of Social Services, may readopt the child in this state according to this subdivision. The readoption shall include one postplacement in-home visit and the final adoption order.
"(2) The petition to readopt may be granted if all of the following apply:
"(A) The adoption was finalized in accordance with the laws of the foreign country.
"(B) The resident has filed with the petition a copy of both of the following:
"(i) The decree, order, or certificate of adoption that evidences finalization of the adoption in the foreign country.
"(ii) The child's birth certificate and visa.
"(C) A certified translation is included of all documents described in this paragraph that are not in English.
"(3) If the court denies a petition for readoption, the court shall summarize its reasons for the denial on the record.
"(d) The State Department of Social Services shall certify whether the adoption standards in the following countries meet or exceed those of this state:
"(1) China
"(2) Guatemala
"(3) Kazakhstan
"(4) Russia
"(5) South Korea
"(e) In addition to the requirement or option of the readoption process set forth in this section, each state resident who adopts a child through an intercountry adoption which is finalized in a foreign country may obtain a birth certificate in the State of California in accordance with the provisions of Section 102635 or 103450 of the Health and Safety Code."
[5] Section 200 provides, "The superior court has jurisdiction in proceedings under this [Family] code."
[6] Since the court had jurisdiction over the subject matter (a § 9100 petition) and over the parties, the court clearly used the word "jurisdiction" in its broader sense of having no power to act except in a particular manner. (See Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 288 [109 P.2d 942].)
[7] We have no occasion in this case to determine whether section 9100 may be used to set aside a readoption pursuant to section 8919 (see fn. 4, ante) because the child, M.S., was not readopted in California.
[8] By its own strength.
[9] Section 9101 provides: "(a) If an order of adoption is set aside as provided in Section 9100, the court making the order shall direct the district attorney, the county counsel, or the county welfare department to take appropriate action under the Welfare and Institutions Code. The court may also make any order relative to the care, custody, or confinement of the child pending the proceeding the court sees fit. [¶] (b) The county in which the proceeding for adoption was had is liable for the child's support until the child is able to support himself or herself."
[10] Appellants assert we must construe section 9100 in their favor, because denial of section 9100 relief "may implicate" constitutional issues of full faith and credit and equal protection, as well as comity. However, appellants have forfeited these contentions by failing to offer any analysis. (Badie v. Bank of America (1998) 67 Cal.App.4th 779, 784-785 [79 Cal.Rptr.2d 273].) However, if California were to refuse to recognize out-of-state adoptions, issues of full faith and credit and comity would be implicated. But we do not see how these provisions, or the guarantee of equal protection of the laws, are implicated by statutes that vacate only those adoptions that have been granted in California.