[L. A. No. 19356. In Bank. Sept. 25, 1945.]

THE PEOPLE ex rel. LEON BENWELL, Respondent, v. STANLEY A. FOUTZ, Appellant.

(1)

Frank H. Jacques for Appellant.

J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, and Ernest Purdum and Jesse J. Frampton, Deputies County Counsel, as Amici Curiae on behalf of Appellant.

Robert W. Kenny, Attorney General, Charles W. Johnson, Supervising Deputy Attorney General, Albert D. White, Shibley, Wanzer & Litwin and Geo. E. Shibley for Respondent.

TRAYNOR, J.—The relator was elected Justice of the Peace of Signal Hill Township, County of Los Angeles, for a term of four years beginning January 4, 1943. On August 3, 1944, he went to Mexico City as a delegate to the Inter-American Bar Convention. On August 29, 1944, one week before his return to this state, the Board of Supervisors of Los Angeles County declared his office vacant and appointed defendant to fill the vacancy. A proceeding in quo warranto was then instituted to test defendant's right to the office. Defendant appeals from a judgment of the trial court restor-

ing the relator to the office and seeks to have the execution of the judgment stayed by a writ of supersedeas.

Section 1063 of the Government Code provides: "No county or township officer shall absent himself from the State for more than five days unless either: (a) Upon business for the State, county or township, (b) With the consent of the board of supervisors of the county. In no case shall such officer absent himself from the State for more than two months without the consent of the board of supervisors, with the written approval of the Governor, nor shall such absence continue for a period exceeding six months in any one year." Section 1770 of the Government Code provides: "An office becomes vacant on the happening of any of the following events before the expiration of the term: . . . (f) His absence from the State without the permission required by law beyond the period allowed by law. . . ."

It is conceded that the relator was absent without the consent of the board of supervisors, and that he was not on business for the state, county or township. No question is raised as to the power of the board of supervisors to fill a vacancy in the office to which the relator was elected. The relator contends, however, that there was no vacancy at the time of defendant's appointment on the ground that a justice of the peace is a judicial officer within the meaning of article VI of the state Constitution and sections 1063 and 1770 of the Government Code cannot apply to judicial officers without violating section 9 of that article. That section provides: "The Legislature shall have no power to grant leave of absence to any judicial officer; and any such officer who shall absent himself from the state for more than sixty consecutive days shall be deemed to have forfeited his office. . . ."

As originally enacted, the Constitution expressly vested part of the judicial power of the state in "justices of the peace." (Art. VI, § 1.) As amended in 1911 that section omitted any reference to justices of the peace, and justices courts are now merely included within "such inferior courts as the Legislature may establish." (Art. VI, § 1; see *Robertson* v. *Langford*, 95 Cal.App. 414, 422 [273 P. 150].) The amendment, however, has in no way affected the status of justices of the peace as judicial officers within the meaning of the Constitution. Before the amendment they were "as much judicial officers as any Justice of this Court, or any Judge of the Superior Court." (*People* v. *Ransom*, 58 Cal. 558,

560.) After the amendment they remained "part of the constitutional judicial system of the state" (*Proctor* v. *Justice's Court,* 209 Cal. 39, 41 [285 P. 312]) and "judges within the meaning of said Judicial Council amendment [article VI, section 1a] as well as within the meaning of other provisions of said article VI." (*Edler* v. *Hollopeter,* 214 Cal. 427, 429 [6 P.2d 245].) Although section 1 of article VI of the Constitution no longer mentions justices of the peace, sections 10 and 15 of that article continue to refer to them as judicial officers.

The relator contends that a judicial officer cannot also be a township officer. With regard to elections this contention must be upheld, for the Elections Code, which defines a justice of the peace as a judicial officer (§ 31), and a township officer as a county officer (§ 37), expressly excludes judicial officers from the section defining county officers (§ 35). A justice of the peace, however, is clearly a township officer within the meaning of section 4014 of the Political Code, which provides: "The officers of a township are: two justices of the peace. . . ." In *People* v. *Chaves,* 122 Cal. 134 [54 P. 596], this court held that justices of the peace were included within the scope of section 25(21) of the County Government Act of 1893 (Stats. 1893, p. 346), which authorized county boards of supervisors to "fill, by appointment, all vacancies . . . in . . . township offices. . . ." In *People* v. *Cobb,* 133 Cal. 74 [65 P. 325], this court held that the title of the County Government Act of 1897 (Stats. 1897, p. 452), "An act to establish a uniform system of county and township governments" included an adequate reference to the tenure and election of a justice of the peace within the meaning of section 24 of article IV. In *Sanchez* v. *Fordyce,* 141 Cal. 427 [75 P. 56], section 56 of the County Government Act of 1901 (Stats. 1901, p. 686), which provided that "in townships having a population less than six thousand, there shall be but one justice of the peace and one constable" was held constitutional within the meaning of section 5 of article XI, which confers upon the Legislature the power to provide for the election or appointment of such township officers as convenience may require. In *Cox* v. *Jerome,* 31 Cal.App. 97, the court held that a justice of the peace was one of the officers contemplated by section 9 of article XI, which provided that the compensation of any "city, county, town or municipal officer" shall not be increased during his term of office. Sec-

tion 4 of article XI of the Constitution originally directed the Legislature to "provide for township organizations." The Legislature, however, never made such provision and that section was repealed in 1933. The townships into which section 4015 of the Political Code authorizes boards of supervisors to divide their respective counties are merely geographical subdivisions for the purpose of electing justices of the peace and constables. (*Kahn* v. *Sutro,* 114 Cal. 316, 332 [46 P. 87, 33 L.R.A. 620].) It is clear, therefore, that "township" and "judicial" are not mutually exclusive terms and that a judicial officer can be a township officer without violating the constitutional provision against his exercise of powers of the legislative or executive departments of the state.

Once it is established that a judicial officer may be a township officer, it remains to be determined whether sections 1063 and 1770(f) of the Government Code relate to all township officers or, as contended by the relator, only to those township officers that are not judicial officers. Section 1770(f) declares an office to be vacant when the incumbent is absent from the state without the permission required by law. The section deals, therefore, with officers who can secure permission to leave the state. Section 1063 provides that a township officer may secure such permission from the county board of supervisors. ■ The Constitution, however, forbids the Legislature to grant a leave of absence to any judicial officer. Since the Legislature cannot delegate a power that it does not possess, a county board of supervisors has no power to grant leaves of absence to judicial officers. Therefore, if a judicial officer were subject to section 1770(f) he would be liable to forfeit his office for not securing a permission that the Constitution forbids the county board of supervisors to grant him.

■ Defendant contends, however, that the history of section 1063 makes it clear that the section was intended to apply to all township officers. He notes that section 2 of the Government Code specifies that the provisions of that code shall be construed as continuing and restating similar provisions of existing statutes, and that the Political Code (Stats. 1907, p. 354) and the County Government Acts of 1897 and 1883, *supra,* which contained provisions similar to section 1063 (Pol. Code, § 4313, § 64 of the act of 1897, and § 67 of the act of 1883) expressly declared that justices of the peace were township officers. (Pol. Code, § 4014, § 56 of the act of 1897, and § 58 of the act of 1883.) Assuming that section

1063 was intended to apply to justices of the peace, it remains to be determined whether such an application is constitutional.

In contending that it is constitutional, defendant attempts to distinguish a leave of absence and a mere absence from the state. A leave of absence does not necessarily involve absence from the state, and an officer may be absent from the state without having been granted a leave. The question is, however, whether the Legislature intended that the consent to an absence from the state by a township officer should be anything but a leave of absence. Defendant contends that a leave of absence relieves an officer from the obligation of performing his official duties, whereas a mere permission to be absent does not relieve him from that obligation. Since a judicial officer, however, must exercise his judicial powers within the state (*People* v. *Ruef*, 14 Cal.App. 576, 626 [114 P. 48, 54]), section 1063 can be given the meaning contended for by defendant only by excluding judicial officers from its application, for the Legislature could not have intended to allow an officer to leave the state, and thus place himself in a position in which he could not perform his duties, and at the same time have intended that he should remain under obligation to perform those duties. It follows that if the Legislature intended section 1063 to apply to judicial officers, it must also have intended that compliance with the requirements of that section would relieve those officers of their official duties. If the permission that an officer secures has no effect upon his official duties, it can affect him only in his capacity as private citizen. A private citizen, however, does not need permission to leave the state, and the Legislature could hardly have intended that an officer should obtain legislative consent to his absence unless that consent relieved him from the obligation to perform his duties. The legislative consent contemplated by section 1063 must therefore be regarded as a leave of absence, and the constitutionality of that section as applied to justices of the peace must be tested accordingly.

It is contended that the Legislature is merely forbidden by section 9 of article VI to grant leaves of absence to judicial officers beyond a period of sixty days, but that, since the Constitution is not a grant of power but a limitation upon the Legislature, it may control the absence of judicial officers by granting or withholding leaves of absence within the sixty-day limitation. The language of the first clause of section 9, however, is unqualified, and the framers of the Constitution

could hardly have indicated more plainly that under circumstances like those in the present case the Legislature was to have "no power to grant leave of absence to any judicial officer." The two clauses of section 9 in question were adopted in substantially their present form some ten years after the decision in *People* v. *Wells,* 2 Cal.198 (see Cal. Const., 1849, art. VI, § 5, as amended in 1862). In that case this court held that a constitutional office can become vacant only by some express provision of the Constitution and that the Legislature has no power to declare what shall constitute a vacancy in such an office. Had the framers of the Constitution wished to allow the Legislature the power that *People* v. *Wells* had denied it, they would have given section 9 a different wording. It is immaterial that the Legislature has powers over justices of the peace that it does not possess over other judicial officers, for section 9 cannot be given one construction when applied to justices of the peace and another when applied to other judicial officers. Whatever other powers the Legislature has over justices of the peace, it has no power to grant them leaves of absence, for that field is covered by the Constitution.

 In view of our decision that the relator is entitled to the office to which he was elected in January, 1943, defendant's petition for a writ of supersedeas is denied.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.