[No. C042192. Third Dist. Nov. 7, 2003.]

CALIFORNIA STATE EMPLOYEES' ASSOCIATION, Plaintiff and Respondent, v.
CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM BOARD OF ADMINISTRATION, Defendant and Appellant.

COUNSEL

Jones Day, Jeffrey A. LeVee, Emma Killick, Peter Mixon and Cynthia Rodriguez for Defendant and Appellant.

Anne M. Giese, Daniel S. Connolly and Nancy T. Yamada for Plaintiff and Respondent.

OPINION

**NICHOLSON, J.**—Article XVI, section 17 of the state Constitution prohibits the Legislature from enacting, without a ratifying vote of the electorate, changes in the number, terms and methods of selecting employee members of a public employee retirement system's governing board. The trial court below concluded the constitutional provision also applied to amendments adopted by the retirement system's governing board to its regulations establishing procedures for elections required to be held for selecting employee board members. The court granted a petition for writ of mandate ordering a board not to implement such amendments. We conclude the trial court erred and reverse its judgment.

## FACTS AND PROCEDURAL HISTORY

In 1931, the Legislature established the California Public Employees Retirement System (PERS), and established the Board of Administration (Board) to manage and control PERS. (Gov. Code, § 20120 (former Gov. Code, § 20103).)[1] As early as 1945, the state statute required the Board to be partially composed of employee members of the system. These employee members were to be "elected under the supervision of the board." (Stats. 1945, ch. 123, § 1, p. 577.)

---

[1] All undesignated section references are to the Government Code. In 1995, the Legislature reorganized the Public Employees' Retirement Law but intended not to make any substantive change to the law as it existed prior to 1995. (Stats. 1995, ch. 379, § 1, p. 1955.)

As of July 1, 1991, and at present, state statute requires the Board to be composed of 13 persons, six of whom are employee members of the system. Those six are still to be "elected under the supervision of the board . . . ." (Former § 20100, subd. (g), now § 20090, subd. (g).)[2] All Board members serve four-year terms, and elected Board members are entitled to hold office until the end of their terms. (Former §§ 20101, 20102.1, now § 20095.)[3]

By a 1983 statutory amendment, the Legislature required the Board to develop procedures for electing employee members of the Board. (Stats. 1983, ch. 338, § 1, p. 1534.) That mandate was in effect as of July 1, 1991, and continues in effect today. (§ 20096 (former § 20102).)[4] Pursuant to that

---

[2] Section 20090 reads: "The Board of Administration of the Public Employees' Retirement System is continued in existence. It consists of:

(a) One member of the State Personnel Board, selected by and serving at the pleasure of the State Personnel Board.

(b) The Director of the Department of Personnel Administration.

(c) The Controller.

(d) The State Treasurer.

(e) An official of a life insurer and an elected official of a contracting agency, appointed by the Governor.

(f) One person representing the public, appointed jointly by the Speaker of the Assembly and the Senate Committee on Rules.

(g) Six members elected under the supervision of the board as follows:

(1) Two members elected by the members of this system from the membership thereof.

(2) A member elected by the active state members of this system from the state membership thereof.

(3) A member elected by and from the active local members of this system who are employees of a school district or a county superintendent of schools.

(4) A member elected by and from the active local members of this system other than those who are employees of a school district or a county superintendent of schools.

(5) A member elected by and from the retired members of this system."

[3] Section 20095 reads in full: "The term of office of members of the board is four years expiring on January 15 in the order fixed by law. The board shall hold special elections to fill vacancies which occur during the term of elected members of the board. If at the time a vacancy occurs, the unexpired term is less than two years, the new member elected to fill that vacancy shall hold office for a period equal to the remainder of the term of the vacated office plus four years.

"The Governor or the Speaker of the Assembly and the Senate Committee on Rules, as the case may be, shall fill a vacancy of a member appointed pursuant to subdivision (e) or (f) of Section 20090 by the appointment of a person having the requisite qualifications for the remainder of the vacated term of office.

"*Notwithstanding any other provision of this part, any person elected to the board under Section 20090 shall be entitled to hold that office until the end of the term.*" (Italics added.)

[4] Section 20096 states in full: "The board shall cause ballots to be distributed to each active and retired member of the system in advance of each election, and shall provide for the return of the voted ballots to the board without cost to the member, *and shall develop election procedures*. The results shall be certified by the Secretary of State. The board may require all

authority, the Board promulgated regulations to establish procedures for those elections. (Cal. Code Regs., tit. 2, § 554 et seq.)

Subsequently, at the November 1992 general election, Californians adopted Proposition 162, a constitutional initiative more commonly known as the California Pension Protection Act of 1992. Proposition 162 amended article XVI, section 17 of the California Constitution to read in relevant part as follows: "(f) With regard to the retirement board of a public pension or retirement system which includes in its composition elected employee members, the *number, terms, and method of selection* or removal of members of the retirement board which were required by law or otherwise in effect on July 1, 1991, shall not be changed, amended, or modified *by the Legislature* unless the change, amendment, or modification *enacted by the Legislature* is ratified by a majority vote of the electors of the jurisdiction in which the participants of the system are or were, prior to retirement, employed." (Italics added; we will hereafter refer to this provision as Section 17(f).) .)

In 2001, the Board amended its regulations governing the procedures for electing PERS members to the Board. The revised election procedures included the following changes: They required candidates to obtain a majority (rather than a plurality) of votes to be elected, and included provisions for runoff elections if no candidate obtained a majority of votes on the first ballot; prevented a candidate from running for more than one Board member position at any particular election; permitted candidates to reply to the written statements of other candidates; provided for arbitration of controversies concerning the propriety of a candidate's written statement; and transferred control of election protests from the Board's general counsel to a protest panel designated by an independent, neutral agent.

CSEA filed a complaint and petition for writ of mandate challenging the validity of the Board's amendments to its regulations. CSEA objected to the amendments on the ground Section 17(f) prevented *the Board* from amending its election procedures unless the amendments were ratified by a majority vote of the electors in the jurisdiction in which the system members were employed. It sought declaratory and injunctive relief prohibiting the Board from implementing the amendments unless and until they were ratified.

On August 7, 2002, following trial, the trial court issued judgment in favor of CSEA and granted the requested relief. It reasoned the Board could act only pursuant to power delegated to it by the Legislature, and if the

---

persons who perform election duties to certify, under penalty of perjury, that they properly performed those duties." (Italics added.)

Legislature no longer had the power to enact election changes without a ratifying vote of the electorate, then it could not delegate to the Board the power to enact election changes without a ratifying vote.

The Board timely appealed.

## DISCUSSION

The Board claims the trial court erred when it determined Section 17(f) applied to its adoption of election procedures. It argues Section 17(f)'s unambiguous language refers to changes adopted only by the Legislature to the manner of selecting Board members and does not apply to changes adopted by the Board to its election procedures. We agree.

Our review is de novo. (*Redevelopment Agency v. County of Los Angeles* (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10].) In interpreting a voter initiative such as Proposition 162 and its Section 17(f), "we apply the same principles that govern statutory construction." (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27].) Those principles are as follows: "Where, as here, the issue presented is one of statutory construction, our fundamental task is 'to ascertain the intent of [in this case, the voters] so as to effectuate the purpose of the statute.' . . . We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. . . . We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' . . . If, however, the statutory language is ambiguous, 'we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' . . . Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. . . . Any interpretation that would lead to absurd consequences is to be avoided." (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639], citations omitted.)

Section 17(f)'s language is not ambiguous, and its plain meaning governs our review. The requirement of voter ratification applies only when the Legislature enacts a change, amendment, or modification to the number, terms, or method of selecting or removing Board members. Here, the regulatory amendments were not enacted by the Legislature. Moreover, the amendments did not modify the number, terms or method of selecting or removing Board members as established by the Legislature in sections 20090 and 20095. Section 17(f) thus did not apply to the Board's actions.

CSEA notes Proposition 162's uncodified sections state the voters enacted the measure in part to "give voters the right to approve changes *in the*

*composition* of retirement boards containing elected retirees or employee members." (Stats. 1992, p. A-230, § 3, subd. (b), italics added.) This point is not disputed nor is it relevant. The Board's regulatory amendments simply did not affect the composition of the Board. The number and type of people who could serve on the Board remained the same as established by section 20090.

CSEA asserts the ballot summary arguments and analysis disclose the voters intended Section 17(f)'s voter ratification requirement to apply not only to enactments by the Legislature modifying the Board, but also to enactments by the Board. Because Section 17(f)'s language is unambiguous, we need not review ballot materials to aid us in our interpretation. (*Allen v. Sully-Miller Contracting Co.*, *supra,* 28 Cal.4th at p. 227.)

Even were we to review the ballot materials, we would conclude they do not support CSEA's claim. In his official summary of Proposition 162, the Attorney General stated the measure, in part, "[p]rohibits changing [the] number, terms, and method of selection or removal of members of [the] board without approval of voters of the jurisdiction in which participants of the retirement system are employed." (Ballot Pamp., Gen. Elec. (Nov. 3, 1992) Summary of Prop. 162, p. 36.) He made no mention of the measure's express reference to changes enacted only by the Legislature.

The Legislative Analyst, however, stated the measure "specifies that the *Legislature* cannot change terms and conditions of board membership (for boards with elected employee members) unless a majority of the persons registered to vote in the jurisdiction of the retirement system approves the change. For example, a change in a county retirement system's board membership would require a countywide vote." (Ballot Pamp., Gen. Elec. (Nov. 3, 1992) analysis of Prop. 162, p. 37, italics added.)

In sum, the little information contained in the ballot materials is "too equivocal to overcome the clear" language of Section 17(f). (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 804 [268 Cal.Rptr. 753, 789 P.2d 934].)

CSEA also asserts the amendments are void because the Legislature, as a result of Section 17(f), no longer had the authority to modify election procedures without voter approval, and thus could not delegate such a power to the Board. The trial court, citing *People ex rel. Benwell v. Foutz* (1945) 27 Cal.2d 1, 5 [162 P.2d 1] (*Foutz*), based its judgment in favor of CSEA on this argument. Reliance on *Foutz* is misplaced.

*Foutz* concerned a conflict between a provision of the state Constitution and an enacted statute. Article VI, section 9 at that time stated the Legislature had no power to grant leaves of absence to a judicial officer. Subsequently, the Legislature adopted statutes that prohibited certain officials, including

justices of the peace, from absenting themselves from the state without obtaining a leave of absence from the board of supervisors or else risk vacating their offices. A county board of supervisors declared the office of a justice of the peace vacant under these provisions, and the ousted justice sought to regain his seat.

The *Foutz* court determined the statutes could not apply to judicial officers. Because the Legislature could not grant leaves of absence to judicial officers, it had no power to authorize a board of supervisors to grant leaves of absence to judicial officers. "Since the Legislature cannot delegate a power that it does not possess, a county board of supervisors has no power to grant leaves of absence to judicial officers." (*Foutz, supra,* 27 Cal.2d at p. 5.)

By relying on *Foutz* in this case, the trial court determined in effect Section 17(f) implicitly repealed the statutory delegation of authority to the Board to supervise and develop procedures for electing the six employee members the Legislature required be selected for the Board by election. "Repeals by implication are disfavored and are recognized only when potentially conflicting statutes cannot be harmonized." (*Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328].) We do not discern an implied repeal of these statutes or their successor statutes because any potential statutory conflict can be harmonized.

■ The Legislature established the number, terms and methods of selecting and removing Board members by means of sections 20090, 20095, and their predecessors. The Legislature chose an election under the Board's supervision and procedural regulation as the method of selecting employee members to the Board. This was the method of selection in effect as of July 1, 1991. Section 17(f) subjects the Legislature's power to change this method of selecting Board members to a vote by the electorate.

The Board's establishment and amendment under former section 20102 and current section 20096 of procedures for conducting a member election did not equate with changing the *method* of selecting employee Board members. That method was by election. Section 20096 gave to the Board merely the authority to supervise the election and establish procedures for conducting the election. Nothing in Section 17(f) suggests the Legislature no longer had this power to delegate. Indeed, by keeping the law as it existed in 1991, Section 17(f) established that the Legislature's delegation of regulatory authority to the Board as part of the manner of selecting employee Board members could not be changed by the Legislature without a referendum.

This interpretation is consistent with Proposition 162 expressed intent and purpose. In the measure's uncodified sections, the voters declared: "To

protect pension systems, retirement board trustees must be free from political meddling and intimidation. The integrity of our public pension systems demands that safeguards be instituted to prevent political 'packing' of retirement boards . . . ." (Stats. 1992, p. A-230, § 2, subds. (f), (g).)

Section 17(f) was designed to limit only the Legislature's authority over changing the composition of the Board or the method by which persons became members of the board. It was not designed to limit the Legislature's or the Board's authority to develop procedures for implementing one of those methods. Our interpretation of Section 17(f) comports most closely with the electorate's intent to eliminate political interference with the Board's operation while at the same time preserving the Board's express power to promulgate procedures for employee member elections.

## DISPOSITION

The judgment is reversed. We award costs on appeal to PERS.

Blease, Acting P. J., and Davis, J., concurred.