Filed 7/10/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021, AFL-CIO etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF SONOMA et al., <br><br> Defendants and Respondents. | A138637 <br><br> (Sonoma County <br> Super. Ct. No. SCV252209) |

**I.**

**INTRODUCTION**

Service Employees International Union, Local 1021, AFL-CIO (SEIU) filed the instant lawsuit claiming the Sonoma County Community Development Commission (Commission) lacked legal authority to contract with a private corporation to conduct housing inspection services that had formerly been performed by public employees in Sonoma County.[1] In response to SEIU's lawsuit, the Commission filed a demurrer, claiming Health and Safety Code sections 34144 and 34145[2] expressly authorized the Commission to enter into a contract with a private entity for necessary services, such as housing inspection. In particular, the Commission relied upon section 34145, which gives it the power to "hire, employ, or contract for staff, contractors, and consultants."

---

[1] SEIU, a recognized employee organization within the meaning of Government Code section 3501, subdivision (b), represents several individuals who were employed as housing inspectors and who were laid off as a result of the Commission's decision to outsource these services to a private entity.

[2] All undesignated statutory references are to the Health and Safety Code.

1

The trial court granted the Commission's demurrer and dismissed SEIU's lawsuit, after finding the Commission was free to contract in the private sector. We reach the same result as the trial court, and therefore affirm the judgment of dismissal.

## II.

## FACTS AND PROCEDURAL HISTORY

In 1984, the Sonoma County Board of Supervisors (the Board) passed an ordinance creating the Commission. The Commission was established pursuant to sections 34110 and 34115 to allow for the operation of Sonoma County's housing authority and redevelopment agency under one umbrella organization. (See § 34112.) Among its many functions, the Commission may "[m]ake and execute contracts and other instruments necessary or convenient to the exercise of its powers." (§ 34143, subd. (c).)

In 2009, the Commission entered into an agreement with a private entity, Sterling Co. Inc. (Sterling), in which Sterling agreed to provide the Commission with housing inspection services during periods of high workload. SEIU responded by letter dated February 9, 2009, indicating that it did not have an issue with the Commission contracting out overflow housing inspection because it did not affect the number of hours worked by employees represented by SEIU. However, SEIU stated that if the amount of work performed by a contract employee rose to the level of a permanent, part-time employee, SEIU would expect the county to fund such a position instead of contracting out the work.

On or about June 8, 2012, the Commission sent a letter to SEIU indicating its intention to "contract out certain work normally performed by employees represented by SEIU." The action was purportedly taken to achieve cost savings. The letter stated that "[a]s a result of this change, the [Commission] will eliminate three positions and lay-off three full time employees in mid-September 2012." In response, SEIU demanded that the county cease and desist from contracting out work that would affect the hours of bargaining unit employees.

2

On June 26, 2012, the Board authorized the county to contract out housing inspection services to Sterling. On June 28, 2012, the Commission sent out 90-day layoff notices to three SEIU members. The notices indicated that the three employees would be laid off effective September 17, 2012.

On August 20, 2012, SEIU filed its "Complaint for Writ of Mandate and Injunctive Relief."[3] The Commission then filed a demurrer to SEIU's complaint, which the trial court sustained with leave to amend. After the deadline passed without SEIU filing an amended complaint, the court issued a judgment of dismissal on February 27, 2013, and notice of entry of such judgment was issued on March 8, 2013. SEIU filed its notice of appeal on May 3, 2013.

## III.

## DISCUSSION

### A. Standard of Review

As this division held in *Shuts v. Covenant Holdco LLC* (2012) 208 Cal.App.4th 609: " ' "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows

---

[3] The County of Sonoma and the Board claim they were improperly named in this lawsuit because they "did not make the decision to contract out in the instant matter," and they ask this court to dismiss them from this lawsuit. However, we are not in a position to entertain this request because it is unsupported with reasoned argument or citations to authority. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

3

there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" [Citations.]' [Citation.]" (*Id.* at pp. 616-617.)

We review the trial court's decision de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. (*Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 606.)

The question of whether the Commission had the power to outsource housing inspection services involves interpreting the statutes governing the scope of the Commission's authority to contract. On appeal, "[t]he meaning and effect of statutory provisions is a matter for our independent review. [Citation.]" (*Service Employees Internat. Union v. Board of Trustees* (1996) 47 Cal.App.4th 1661, 1665.)

### B. *Sections 34144 and 34145 Control the Outcome of This Case*

There are two principal statutes that address when, if ever, the Commission may contract with a non-public entity for services such as housing inspection.

Section 34145 states: "In addition to all other powers and authorities of the commission, the commission *may hire, employ, or contract for staff, contractors, and consultants*, or the commission may use community staff, contractors or consultants under contract or other arrangements with the community at the expense of the commission, the community, the redevelopment agency, or the housing authority."[4] (Italics added.)

Enacted contemporaneously with section 34145, section 34144 states: "(a) A commission may select, appoint, and *employ such permanent and temporary officers, agents, counsel, and employees as it requires*, and determine their qualifications, duties, benefits, and compensation, subject only to the conditions and restrictions imposed by the legislative body on the expenditure or encumbrance of the budgetary funds appropriated to the commission. The commission shall adopt personnel rules and regulations applicable to all its employees. Such rules shall contain procedures affecting conflicts of

---

[4] "Community" is statutorily defined as "a city, county, city and county, or Indian tribe, band, or group which is incorporated or which otherwise exercises some local governmental powers." (§ 34100.)

interest, use of funds, personnel procedures on hiring and firing including removal of personnel for inefficiency, neglect of duties, or misconduct in office.  Such rules and regulations shall be a public record.

"(b) A commission may contract with the Department of Housing and Community Development or *any other agency or entity* for the furnishing by *the department, agency, or entity* of any necessary staff services associated with or required and which could be performed by the staff of a commission."  (Italics added.)

In interpreting sections 34144 and 34145, we observe certain fundamental interpretive precepts.  We begin with the principle that " '[t]he objective of statutory construction is to determine the intent of the enacting body so that the law may receive the interpretation that best effectuates that intent.  [Citation.]'  [Citation.]  To ascertain that intent, 'we turn first to the words of the statute, giving them their usual and ordinary meaning.  [Citations.]'  [Citation.]  The statute's every word and clause should be given effect so that no part or provision is rendered meaningless or inoperative.  [Citations.]  A statute is not to be read in isolation, but construed in context and ' "with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.  [Citations.]" '  [Citation.]  'If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citations.]'  [Citations.]"  (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 488.)

In enacting these provisions, the Legislature's intent is clear.  It enacted broad provisions, enabling the Commission to "hire, employ, or contract for staff, contractors, and consultants" (§ 34145) and authorizing the Commission to contract with "any other agency or entity for the furnishing . . . of any necessary staff services" (§ 34144, subd. (b)).  What these words are plainly intended to do is give the Commission free reign in contracting for the services in question, regardless of whether the employees performing these services come from the public or private sector.  If the Legislature had intended to prohibit the Commission from contracting with the private sector in the

5

performance of its duties, it could have easily accomplished this result by using restrictive terminology. It did not do so.

Despite this manifest intent, SEIU attempts to give the language in section 34145 a different meaning by asserting that section 34145 "is simply a grant of authority to the [Commission] to pay for services" and "cannot be interpreted as granting the [Commission] the authority to contract with private entities." However, SEIU's interpretation of section 34145 not only ignores the statute's language authorizing the Commission to "hire, employ, or contract for staff, contractors, and consultants," it also would lead to an absurd result. (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [statutory interpretation must avoid absurd results the Legislature would not have intended].) It is absurd to believe that the Legislature would authorize payment to "staff, contractors, and consultants" if, at the same time, they could not be lawfully hired. In the end, SEIU is unable to escape the unambiguous wording of section 34145 which, standing alone, demonstrates that the Commission was entitled to enter into the contract challenged in this appeal. When there is but one intent evident from the statutory words, the Legislature is presumed to have meant what it said, and the plain meaning of the language governs. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192.)

Nevertheless, SEIU directs us to language in section 34144, subdivision (b), granting the Commission authority to contract with "the Department of Housing and Community Development or *any other agency or entity* for the furnishing by the department, *agency, or entity* of any necessary staff services." (Italics added.) In doing so, SEIU argues that the word "public" is implied and necessary to qualify the words "agency" and "entity" as used in section 34145, subdivision (b), so that the terms must be interpreted to include only public agencies and public entities.

Specifically, SEIU argues the term "agency" as used in section 34145, subdivision (b), actually means a "redevelopment agency" because that is how it is defined in section 33003. However, we note section 33003 is part of the Community Redevelopment Law (§ 33000 et seq.), which is separate and distinct from the sections

6

applicable here that pertain to a community development commission (§ 34100 et seq.). The sections governing the Commission contain no similar definition of "agency." But SEIU's attempt to link the definition of "agency" to a public redevelopment agency sets up its argument that the term "entity" as used in section 34144, subdivision (b) "must be interpreted to only include other public entities similar to the Department of Housing and Community Development and redevelopment agencies that are engaged in the business of housing development." Construing these provisions in the manner advocated by SEIU would be unreasonable.

The words "agency or entity" in section 34144, subdivision (b), are inclusive of public and private agencies and entities because the statute contains no qualifying or limiting language that would negate its application to a private agency or entity.[5] "It is our task to construe, not to amend, the statute. 'In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted . . . .' [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.)

In addition, an endorsement of SEIU's construction of section 34144, subdivision (b), to restrict the Commission's contracting authority to only public agencies and entities would set up an irreconcilable conflict with section 34145, which broadly permits contracts for "staff, contractors, and consultants." Statutes covering the same

---

[5] We reject SEIU's effort to disregard section 34144, subdivision (b)'s plain and ordinary language in favor of an interpretation forged from other provisions governing unrelated topics where the Legislature has used the words "public or private." (See §§ 34147; 34148 [commission may accept financial assistance from "public or private source[s]".) We also reject the Commission's argument that other "similarly worded contracting out statutes" in the Education Code have been interpreted to include private organizations. These arguments are not persuasive as we find the task of interpreting this statute can be accomplished by interpreting its plain language without reference to guides to Legislative intent, such as the words the Legislature used in unrelated statutes.

7

subject matter must be harmonized to the extent possible in a way that is consistent with the intent of the Legislature. (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1095-1096; *Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 991; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [statutes relating to the same subject must be harmonized, both internally and with each other, to the extent possible].)

Sections 34144 and 34145 were enacted contemporaneously and pertain to the same subject matter. (Added by Stats. 1974, ch. 642, § 1, pp. 1504-1505.) "We cannot presume the Legislature enacted inconsistent provisions on the same subject. [Citation.]" (*Ibarra v. City of Carson* (1989) 214 Cal.App.3d 90, 97.) "It is therefore obvious that the Legislature never intended that either section restrict the other." (*People v. Valdez* (1982) 137 Cal.App.3d 21, 26.) The only interpretation which harmonizes both statutes is that the Commission has the unrestricted right to contract with agencies and entities.

In sum, we conclude that a reasonable and common sense construction of sections 34144 and 34145—one that harmonizes the statutes and gives effect to the plain language selected by the Legislature—provides that the Commission may contract in the private sector for the provision of housing inspection services. Had the Legislature intended to restrict the Commission's authority to contract out for services that have historically been performed by public employees, it could easily have imposed such a restriction in describing the Commission's contract-making authority. It did not do so, and we will not imply such a restriction.

### C. Government Code section 53060—"Special Services"

Next, SEIU points to Government Code section 53060 as an impediment to the Commission's outsourcing of housing inspection services. That section provides, in pertinent part: "The legislative body of any public or municipal corporation or district may contract with and employ any persons for the furnishing to the corporation or district special services and advice in financial, economic, accounting, engineering, legal, or administrative matters if such persons are specially trained and experienced and competent to perform the special services required."

8

It is undisputed Government Code section 53060 applies to public corporations, such as the Commission. (See § 34110.) Consequently, SEIU insists the Commission's ability to contract is governed by Government Code section 53060 and is expressly limited to "special services" in specified areas, and is further limited to contractors who are specially trained, experienced, and competent to perform such services.

The criteria for determining the nature of special services were set forth in *Darley v. Ward* (1982) 136 Cal.App.3d 614: "Whether services are special requires a consideration of factors such as the nature of the services, the qualifications of the person furnishing them and their availability from public sources. [Citation.] Services may be special because of the outstanding skill or expertise of the person furnishing them. [Citations.] Whether services are special is a question of fact. [Citations.]" (*Id*. at pp. 627-628.)

We need not speculate whether a court would find that housing inspection is a "special service" under Government Code section 53060. Government Code section 53060 is a general statute, applicable to "any public or municipal corporation or district"—a wide variety of public entities, whereas sections 34144 and 34145 are special statutes, applicable only to community development commissions formed under the Health and Safety Code. Ordinary principles of statutory interpretation point to the conclusion that sections 34144 and 34145, the more specific provisions, control over Government Code section 53060, the general statute. " 'It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.' [Citation.]" (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577, followed in *Miller v. Superior Court* (1999) 21 Cal.4th 883, 895.)

Nothing in sections 34144 and 34145, the statutes governing the Commission's authority to contract for housing inspection services, suggest that the "special services"

9

limitation of Government Code section 53060 is incorporated into these statutes, or otherwise limits the scope of these statutes.

### D. Improper Delegation of Authority

SEIU also asserts the contracts entered into with Sterling are void because the Commission "had no authority to enter into such contracts." SEIU's argument, as we understand it, is the Commission "was created by the Sonoma County Board of Supervisors, and the [Board] cannot delegate to the [Commission] powers or authority which the [Board] itself does not possess." Specifically, "because the [Board] does not have the authority to contract out services to a private entity unless such services are deemed special services pursuant to [Government] Code [section] 31000 [the county analogue to Gov. Code, § 53060], the Board cannot delegate such power to the Commission."

In making this argument, SEIU relies on *People ex rel. Benwell v. Foutz* (1945) 27 Cal.2d 1 (*Foutz*).) *Foutz* concerned a conflict between a provision of the state Constitution and an enacted statute. Article VI, section 9 at that time stated the Legislature had no power to grant leaves of absence to a judicial officer. (*Foutz*, at p. 3.) Subsequently, the Legislature adopted statutes that prohibited certain officials, including justices of the peace, from absenting themselves from the state without obtaining a leave of absence from the board of supervisors or else risk vacating their offices. (*Ibid*.) A county board of supervisors declared the office of a justice of the peace vacant under these provisions, and the ousted justice sought to regain his seat. (*Id.* at p. 2.)

The *Foutz* court determined the Legislature had no power to authorize a board of supervisors to grant leaves of absence to judicial officers because "that field is covered by the Constitution." (*Foutz*, *supra*, 27 Cal.2d at p. 7.) The court reasoned, "[s]ince the Legislature cannot delegate a power that it does not possess, a county board of supervisors has no power to grant leaves of absence to judicial officers." (*Id.* at p. 5.)

Our case bears no resemblance to *Foutz*. *Foutz* involved the right of legislative bodies to legislate in contravention of a constitutional provision. The *Foutz* decision rested upon the unremarkable proposition that the Legislature cannot delegate to a

10

subordinate body authority to do something that is beyond its own power. In this case, we perceive no invalid delegation of authority by the Board. Even though the Commission was originally created by the Board, the Commission's powers, duties and scope of authority are not delegated but instead, are fixed and circumscribed by the Legislature. In contrast to *Foutz*, there is no argument made in this dispute that the Legislature did not have the authority to define the contractual rights of public agencies, such as the Commission. As such, there was no improper delegation of power.

## IV.

## DISPOSITION

The judgment is affirmed. Costs on appeal to the Commission. (Cal. Rules of Court, rule 8.278(a)(2).

_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.

11

Trial Court:                    Sonoma County Superior Court

Trial Judge:                    Hon. Elliot L. Daum

Counsel for Appellant:          Weinberg, Roger & Rosenfeld
                                Matthew J. Gauger, Gary P. Provencher,
                                Kerianne R. Steele

County for Respondent:          Bruce D. Goldstein
                                County Counsel

                                Tambra L. Curtis
                                Deputy County Counsel