Filed 5/8/19; pub. order 6/6/19 (see end of opn.)
Reposted to provide correct filed date on pub order

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| AMALGAMATED TRANSIT UNION, LOCAL 276 et al., | C086260 |
| Plaintiffs and Appellants, | (Super. Ct. No. STK-CV-UWM-2016-0009596) |
| v. | |
| SAN JOAQUIN REGIONAL TRANSIT DISTRICT, | |
| Defendant and Respondent. | |

This case involves the interpretation of provisions of the San Joaquin Regional Transit District Act (Pub. Util. Code, § 50000, et seq.) (Act)[1] relating to the composition and selection of some members of the retirement board. Amalgamated Transit Union, Local 276 and its president, Alan Wagner (collectively, the Union) brought this mandamus petition against the San Joaquin Regional Transit District (the District),

_____

[1] Further undesignated statutory references are to the Public Utilities Code.

1

alleging the Union has the right to fill by appointment a vacancy on the District's retirement board, to ensure labor-management parity, as the Union claims is required by section 99159. The District proposes to conduct an election by all employees (not only union members) to fill the vacancy, as it claims is required by an earlier statute, section 50150. The trial court denied the petition and the Union timely appealed. After hearing oral argument, we vacated submission and ordered supplemental briefing, reserving the option to order further argument if we deemed it necessary. We do not.

After considering all the briefing and argument, we find the Union's position more persuasive. It harmonizes the two statutes, avoids any constitutional question, and is in accord with the use of the term "representative" in federal labor law and the long-standing practice of the parties--the only parties affected by the two statutes. Accordingly, we reverse.

## LEGAL AND FACTUAL BACKGROUND

The Act was passed in 1963. (See Stats. 1963, ch. 839, § 1, p. 2050.) The District was created in part to secure federal transportation funds, the acceptance of which came with certain federal obligations, including certain labor protections. (See *Stockton Metropolitan Transit Dist. v. Amalgamated Transit Union* (1982) 132 Cal.App.3d 203, 207-208, 212; Stats. 2003, ch. 845, § 1(b), p. 6231.)

The original legislation provided that the District "shall create a retirement board of not more than five members, *at least two members of which shall be the elected representatives of the employees*, to administer the retirement system, and shall define its powers and duties and the tenure of the members." (§ 50150, italics added; Stats. 1963, ch. 839, ch. 1, p. 2050.) This provision of the Act has never been amended. In 2003 the legislature added section 99159. Section 99159 provides in part: "(a) Any retirement system established or maintained pursuant to this division for employees of a transit district who are members of a unit appropriate for collective bargaining shall be maintained pursuant to a collective bargaining agreement and this section. [¶] (b)

2

Notwithstanding any other provision of this division, the retirement system and the funds of the system shall be managed and administered by a retirement board *composed of equal representation of labor and management*."[2]  (Italics added.)

In an uncodified part of the 2003 legislation, the Legislature explained the evolution of  public transit systems "through the takeover and consolidation of private transit operations," the need to ensure "strong standards of fiduciary duty" for retirement boards--in part emphasizing the importance that boards be comprised of "equal representation of labor and management" and be administered consistent with federal labor law--and referenced the passage of Proposition 162 (described, *post*), which requires that public pension boards be "independent of the public agency governing board."  (Stats. 2003, ch. 845, § 1, p. 6231.)

Proposition 162, the California Pension Protection Act of 1992, referenced in the 2003 legislation, was adopted at the November 3, 1992, General Election.  As we explained in *Westly v. Board of Administration* (2003) 105 Cal.App.4th 1095, Proposition 162 amended the California Constitution in part to prevent legislative interference with retirement funds and expanded the duties and powers of retirement boards, which were to have plenary authority and responsibility for the investment of moneys and administration of the particular retirement system, to be exercised to protect participants and beneficiaries.  (*Id*. at pp. 1100-1102 & fns. 6-8, pp. 1110-1112; see also *California State Employees' Assn. v. Board of Administration* (2003) 113 Cal.App.4th 137, 144-145 [Proposition 162 was in part designed to ensure retirement boards trustees were " 'free from political meddling and intimidation' " and " 'to prevent political "packing" of retirement boards' "].)

A key provision of Proposition 162 provides in full as follows:

---

[2]  Both sections 50150 and 99159 are in division 10 of the Public Utilities Code.

3

"With regard to the retirement board of a public pension or retirement system which includes in its composition elected employee members, the number, terms, and method of selection or removal of members of the retirement board which were required by law or otherwise in effect on July 1, 1991, shall not be changed, amended, or modified by the Legislature unless the change, amendment, or modification enacted by the Legislature is ratified by a majority vote of the electors of the jurisdiction in which the participants of the system are or were, prior to retirement, employed." (Cal. Const., art. XVI, § 17, subd. (f).)

The District has a retirement plan, restated effective June 20, 2014 (the Plan). The Plan was subject to collective bargaining between the District and the Union. The Plan provides for the administration by the Retirement Board (the Board), "which shall be composed of five (5) members, two (2) members as representatives of [the District] (one being a member of the [District's] Board of Directors and one Non-Represented Employee representative) and two (2) representatives of the Union, and one Umpire Member (who shall only participate as a member of the Retirement Board when there is a deadlock vote of the other four members)."

After a Union representative left the Board, the Union president appointed a new Union representative to the Board. The District took the position that the Union did not have authority to unilaterally appoint members to the Board; instead, the employee representatives must be elected by *all* employees (union and non-union) of the District. The District cited section 50150 as authority for its position. The District proposed to hold an election for the vacant Board seat. All employees would be eligible to nominate him or herself, another district employee, or a non-employee. The person receiving the most votes would be elected to fill the vacancy on the Board.

The Union objected to this proposal, arguing it was contrary to the negotiated provisions of the Plan and the provisions of section 99159. Further, the Union had learned the District passed bylaws for the Plan and objected that only the Board could adopt such bylaws.

4

The Union filed a petition for a writ of mandate seeking to compel the District to comply with section 99159, ordering the District to cease and desist from purporting to enact bylaws or otherwise interfering with the administration of the Plan, and for a temporary restraining order, temporary injunction, and permanent injunction to prevent the District from holding any election for the seats of Union members on the Board.

The trial court denied the Union's petition and the Union timely filed this appeal from the judgment.

## DISCUSSION

### I

*Burden for Relief and Standard of Review*

"There are two essential requirements to the issuance of a traditional writ of mandate: (1) a clear, present and usually ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right on the part of the petitioner to the performance of that duty. [Citation.]" (*California Assn. for Health Services at Home v. State Dept. of Health Services* (2007) 148 Cal.App.4th 696, 704.) Mandate is the appropriate remedy to enforce a mandatory statutory duty. (*Newland v. Kizer* (1989) 209 Cal.App.3d 647, 655-656.)

The facts are not disputed, and the parties generally agree the case presents issues of statutory interpretation to be reviewed de novo by this court. We agree with the parties. (See, e.g., *California Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96 Cal.App.4th 824, 827.)

### II

*Interpretation of Sections 50150 and 99159*

The Union contends it alone is authorized to fill the vacancy on the Board because section 99159 requires "a retirement board *composed of equal representation of labor and management.*" (*Id.*, subd. (b).) The District contends section 50150 requires an election by all employees to fill the vacancy because the enacting legislation requires the

5

District to "create a retirement board of not more than five members, *at least two members of which shall be the elected representatives of the employees*."

The Union has two responses to the District's position. First, it contends section 99159, as the later statute, supersedes section 50150. In response, the District contends that under article XVI, section 17(f) of the California Constitution, the Legislature could not change "the method of selection" of members of the Board because it included "elected employee members."

The Union's second argument is that the two statutes, sections 50150 and 99159, should be harmonized and "elected representatives of the employees" in section 50150 should be read to mean Union appointed Board members. The Union asserts this interpretation of the statute is reflected in the terms of the Plan and we should defer to the interpretation of the statute by the parties affected by it. "Still greater judicial deference is accorded to a contemporaneous administrative interpretation 'long acquiesced in by all persons who could possibly have an interest in the matter.' " (*Jacobs, Malcolm & Burtt v. Voss* (1995) 33 Cal.App.4th 1399, 1405, fn. 3.)

At oral argument, the Union expanded upon this second argument, asserting that "elected representatives of the employees" was a synonym for Union representative.[3]

---

[3] " 'Terms of art are words having specific, precise meaning in a given specialty.' " (*People v. Gonzales* (2017) 2 Cal.5th 858, 871, fn. 12.) The Union has not directed us to, nor have we found, anything that indicates the term "elected representatives of the employees" is a term of art in the labor context. Nonetheless, courts *sometimes* use the term to describe the union elected to represent the employees. (See, e.g., *N. L. R. B. v. Wooster Div. of Borg-Warner Corp.* (1958) 356 U.S. 342, 344 [union "was certified by the Board to the [Company] as the *elected representative of* an appropriate unit of the company's *employees.*"], italics added; *N.L.R.B. v. Dixon Industries, Inc.* (10th Cir. 1983) 700 F.2d 595, 597 ["certified the Union as the validly *elected representative of Dixon's employees* in the production and maintenance department."], italics added; *N.L.R.B. v. Pinkerton's, Inc.* (6th Cir. 1980) 621 F.2d 1322, 1324 ["ordering it to bargain with the union certified by the Board as *the employees' elected representative*"], italics added.)

6

The District was not present at oral argument. We requested supplemental briefing on five specific questions designed to address the Union's second argument.

Supplemental briefing made clear the parties emphasize different words in the phrase "elected representatives of the employees." The Union puts the focus on "representative," while the District stresses "elected."

In supplemental briefing, the Union argues the term "representative" in the labor law context typically refers to a labor union which has been elected to represent employees. It cites various provisions of the federal National Labor Relations Act of 1935 (NLRA) (29 U.S.C. § 151 et seq.), in which the term is so used. (E.g., 29 U.S.C. § 151 [policy of United States to protect the exercise of workers of "designation of representatives of their own choosing"]; 29 U.S.C. § 157 [employees have right "to bargain collectively through representatives of their own choosing"]; 29 U.S.C. § 159, subd. (a) ["Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees"].) The Union argues that a union becomes the employees' representative through an election, thus the employee's elected representative is a union.

The Union relies on cases that have turned to the NLRA and cases interpreting it to interpret California labor laws. (See, e.g., *Los Angeles Metropolitan Transit Authority v. Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688-689 overruled in part by *County Sanitation Dist. No. 2 v. Los Angeles County Employees Assn.* (1985) 38 Cal.3d 564; *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 617; *Rae v. BARTSPA* (1980) 114 Cal.App.3d 147, 152.) "When legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation." (*Los Angeles Metropolitan Transit Authority,* at pp. 688-689.)

The District argues the plain meaning of the term "elected representatives of the employees" should be used and an election by all employees of the District is required. It notes that section 50120, subdivision (b)(2)(A), describing the composition of the arbitration board to resolve disputes in collective bargaining, does not call for elected members and refers specifically to union representatives. "The arbitration board shall be composed of two representatives of the transit board, two representatives of the labor organization, and a fifth member to be agreed upon by the representatives of the transit board and labor organization." (*Ibid*.)

We do not find the language of section 50120 determinative. That section comes into play only if there is a union and collective bargaining. The District must have a retirement board even if there is no union. If there were no union, the employees' representative would have to be elected by the employees and section 99159 would not apply.

"We do not construe statutes in isolation. Rather, we read every statute taking into consideration the entire scheme of law of which it is part. In doing so, the whole statutory scheme may be harmonized and retain effectiveness." (*People v. Bush* (2016) 245 Cal.App.4th 992, 1003.) "If two seemingly inconsistent statutes conflict, the court's role is to harmonize the law." (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 118.)

Section 99159 requires, for retirement systems subject to collective bargaining, that the retirement board be "composed of equal representation of labor and management." (§ 99159, subd. (b).) The parties agree that in this collective bargaining context, the term "labor" refers to the union. We join that agreement.

The District contends there is no conflict between sections 50150 and 99159 because section 99159 does not speak to the method of selecting employee representatives to the Board. It appears to assume that an election by all employees (including those in management of the District) will result in Union representation. But it

8

is unclear to us how there can be "equal representation of labor [the Union] and management" if the labor representatives are chosen in part by employees who are not members of the Union and the elected person may be someone who is not a member of the Union (or even an employee of the District).

The District argues accepting the Union's interpretation alters the method of selection of Board members from the election required by section 50150. It contends such a change must be approved by the electorate under article XVI, section 17(f) of the state constitution. The District's interpretation, however, does not give effect to section 99159. In deciding between the two proposed interpretations, we consider "the maxim that a statute must be construed, if possible, to avoid constitutional issues." (*People v. Brown* (1993) 6 Cal.4th 322, 335.) The Union's position gives full effect to both section 50150 and section 99159 without raising constitutional concerns.

Finally, we consider the past practice in the District. "It is a well-established rule of statutory construction that ' "[t]he contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect, while not controlling, is always given great respect. And a contemporaneous interpretation long acquiesced in by all persons who could possibly have an interest in the matter, has been held to be sufficient to justify a court in resolving any doubt it might have as to the meaning of ambiguous language employed by the legislature, in favor of sustaining such long unquestioned interpretation.' " [Citation.] Under these circumstances, the administrative practice will be upheld ' "unless it is clearly erroneous or unauthorized." ' [Citations.]" (*Steelgard, Inc. v. Jannsen* (1985) 171 Cal.App.3d 79, 88.)

The District admits that previously the Union sat on the Board. This practice is reflected in the negotiated Plan that sets the five-member board as "two (2) members as representatives of [the District] (one being a member of the [District's] Board of Directors and one Non-Represented Employee representative) and two (2) representatives of the Union, and one Umpire Member (who shall only participate as a member of the

9

Retirement Board when there is a deadlock vote of the other four members).” The District explains that new and more experienced Board members with experience managing retirement plans, including the County's, have questioned whether the current structure of the Board met legislative requirements. We note there are significant differences between the composition of a county retirement board and that of the District's Board. Under the County Employees Retirement Law of 1937, two of the members of the retirement board are “active members of the association elected by it within 30 days after the retirement system becomes operative in a manner determined by the board of supervisors.” (Gov. Code, § 31520; see also § 31520.1, subd. (a) [same except excluding safety members].) There is no provision for a union representative.

Harmonizing and giving effect to sections 50150 and 99159, avoiding any constitutional questions, and taking into consideration the interpretation of “representative” in federal labor law and the past practices of the parties, we conclude section 50150 does not authorize an election by all of the District's employees to fill the vacancy of a Union representative on the Board. Accordingly, the District had no authority to call for such an election or to pass bylaws regarding the selection of Board members. The trial court erred in denying the Union's petition for writ relief.

## DISPOSITION

The judgment denying the Union's petition for a writ of mandate is reversed.  The superior court is ordered to grant the petition for a writ directing the District to comply with section 99159, ordering the District to cease holding any elections for Union seats on the Board and from purporting to enact bylaws or otherwise interfering with the administration of the Plan.  The District shall pay the Union's costs of this appeal.  (Cal. Rules of Court, rule 2.278(a).)


                                                  /s/
                                            Duarte, J.


We concur:


     /s/
Mauro, Acting P. J.


     /s/
Renner, J.

Filed 6/6/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| AMALGAMATED TRANSIT UNION, LOCAL 276 et al., | C086260 |
| Plaintiffs and Appellants, | (Super. Ct. No. STK-CV-UWM-2016-0009596) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| SAN JOAQUIN REGIONAL TRANSIT DISTRICT, | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

1

THE COURT:

The opinion in the above-entitled matter filed May 8, 2019, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____/s/_____
Mauro, Acting P. J.


_____/s/_____
Duarte, J.


_____/s/_____
Renner, J.

EDITORIAL LISTING


APPEAL from a judgment of the Superior Court of San Joaquin County, Carter P. Holly, Judge. Judgment reversed with directions.

Neyhart, Anderson, Flynn & Grosboll and Benjamin K. Lunch for Plaintiffs and Appellants Amalgamated Transit Union, Local 276 and Alan Wagner.

Palmer Kazanjian Wohl Hodson, Treaver K. Hodson, and Alexandra M. Asterlin for Defendant and Respondent San Joaquin Regional Transit District.